KANSAS CITY MILLING COMPANY v. RILEY *et al.*, *Plaintiffs in Error.*

Division Two, March 17, 1896.

1. **City:** STREET: STATUTORY DEDICATION: WANT OF TITLE. The subdivision of property and the making and filing of a plat thereof by one not owning the legal title though in actual possession and occupancy of the premises is ineffectual as a statutory dedication to the public of the streets marked on such plat.

2. ———: ———: COMMON LAW DEDICATION: USER: ADVERSE POSSESSION. Acts of acceptance by the public authorities or user by the public for the time necessary to establish title to real estate by adverse possession are essential to constitute a valid common law dedication.

3. ———: ———: ———: ———. Where, however, the intent to dedicate clearly appears, acceptance may be established by user for a period of less than ten years.

4. ———: STREETS: DEDICATION: INUREMENT OF TITLE. The subdivision of land and filing of a plat on which streets are shown by one who is not the holder of the legal title may become effective as a dedication of such streets on the subsequent vesting of the legal title in the dedicator and the acceptance of the streets by the public authorities.

5. ———: ———: ADVERSE POSSESSION. The building and occupancy of a house in a street without claim of right or title or intent to so claim will not constitute adverse possession.

*Error to Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*G. F. Ballingal* and *Botsford & Williams* for plaintiffs in error.

(1) The attempted dedication by A. J. Lloyd in 1866 was ineffectual as a statutory dedication because he was not at that time the owner. Angell on Highways [3 Ed.], 147; 5 Am. and Eng. Encyclopedia of Law, p. 398. (2) The statute in force at the time required the dedication to be made by the "proprietor" of the property, that is, the "owner" of the same. Gen. Stat. 1865, sec. 1, ch. 44, p. 257; 2 Rap. Law Dict. Hoc., tit. "Proprietor;" *Hannibal v. Draper*, 36 Mo. 332; *McShane v. Moberly*, 79 Mo. 41; *Lee v. Lake*, 14 Mich. 12; s. c., 90 Am. Dec. 220, and cases cited. (3) The attempted dedication by Lloyd was not valid as a common law dedication, because there was no acceptance by the public authorities, or user by the public of the strip in controversy as a public highway. (4) To constitute a common law dedication, there must be an acceptance by the public; and where user is relied on to establish a dedication, it must show continuous, adverse occupancy and use of the land as a public highway for ten years. *Bauman v. Boeckeler*, 119 Mo. 189; *Vossen v. Dautel*, 116 Mo. 379; *Kemper v. Collins*, 97

Mo. 644; *Brink v. Collier*, 56 Mo. 160; 5 Am. and Eng. Encyclopedia of Law, pp. 414 and 415, and cases cited. (5) Defendant's ten years adverse possession is a complete bar to plaintiff's suit. *Ins. Co. v. St. Louis*, 98 Mo. 422; *Mississippi Co. v. Vowels*, 101 Mo. 225. (6) The injury complained of as shown by the evidence, if any, is general to the public and not special to the public. *Canman v. St. Louis*, 97 Mo. 92; *Van Devere v. Kansas City*, 107 Mo. 83. (7) To enable plaintiff to recover in the suit, the damages must be different, both in kind and degrees, from that suffered by the public in general. *Bailey v. Culver*, 84 Mo. 531; *Kinnealy v. Railroad*, 69 Mo. 663; 9 Am. and Eng. Encyclopedia Law, "Highways," p. 414, and cases cited. (8) The switch railway track in use by plaintiff on the strip of ground claimed by it as a public street, constitutes, if the strip be a street, a public nuisance. *Glaessner v. Brewing Association*, 100 Mo. 508. (9) And plaintiff by maintaining this switch, contributes to the obstruction of the street complained of, and can not therefore require defendants to remove their dwelling house constituting a part of such obstruction. *Hannibal v. Richard*, 82 Mo. 330; s. c., 35 Mo. App. 1. (10) The right of action of the adjoining and abutting owner for the removal of the dwelling house of defendants from the strip in controversy accrued at the time of its erection in 1879, and was barred by the ten years' uninterrupted use and occupation prior to the commencement of this suit. *James v. Kansas City*, 83 Mo. 567, and cases cited; *Bird v. Railroad*, 30 Mo. App. 365. (11) In this action plaintiff is entitled to the same remedy, and is barred as to any relief thereunder, as if the erection complained of was a private nuisance. *Welton v. Martin*, 7 Mo. 307; *Schopp v. St. Louis*, 117 Mo. 135.

*Austin & Austin* for defendants in error.

(1) The evidence shows a statutory dedication of Lulu street by A. J. Lloyd on May 24, 1866. (2) There was no necessity of any acceptance on the part of Jackson county while the subdivision was out of the limits nor upon the part of Kansas City while the same was within the limits of said city. Dillon on Mun. Corp., sec. 491; *Reid v. Board*, 73 Mo. 295; *Reagan v. McCoy*, 29 Mo. 356; *Fulton v. Merenfield*, 8 Ohio St. 440; Elliott on Roads, p. 89. (3) The circumstances attending the dedication may be such as to preclude the owner from retracting the dedication even before any act of acceptance on the part of the public; in such case the dedication is immediate. Angell on Highways [3 Ed.], sec. 149; *Trustees v. Cowen*, 4 Paige, 510; *Public v. Lambirk*, 5 Denio, 9. (4) Lloyd and his heirs after the title was perfected by their acts ratified and confirmed the dedication made by Lloyd during his lifetime. (5) Every property owner has the right of access to and from his lot which is special to him. *Knapp v. Railroad*, 28 S. W. Rep. 627; *De Witt v. Van Schoyt*, 110 N. Y. 7.

Burgess, J.—Action by plaintiff, an adjoining proprietor, for an injunction and restraining order against defendants restraining and enjoining them from maintaining a dwelling house in Lulu street, in Kansas City, Missouri. From a judgment and decree abating the same as a nuisance, and ordering its removal from the street, defendants sued out their writ of error to this court.

On the twenty-fourth day of May, 1866, Alfred J. Lloyd subdivided the east half of the southeast quarter (less ten acres off the north end) of section 7,

Vol. 133 mo—37

township 49, of range 33, in Jackson county, Missouri, into lots and blocks, and filed a plat of said subdivision in the recorder's office of said county, which was duly acknowledged and recorded, May 24, 1866. By this plat Lloyd, in so far as it was in his power to do so, donated to the use of the public the land marked and designated on said plat "for streets and alleys." Among the streets marked on said plat was a strip of ground on the north side of said subdivision, twenty-five feet in width, and running east and west the entire length thereof and designated on said plat as "Lulu Street." Another street on said plat, forty feet wide, on the east side of the land, and running north and south its entire length, was designated on the plat as "Broadway."

At the time of this dedication, Lloyd was in the actual possession of the land described in the subdivision, but the title was in one Catherine E. Johnson, a married woman, who in 1853 had attempted to convey the same to John C. McCoy, under whom, through various warranty deeds, Lloyd claimed title. This deed of Mrs. Johnson, her husband joining therein, was acknowledged before a justice of the peace, 'in September, 1853, and not otherwise, and by reason thereof failed to convey any interest in the premises. Afterward, in 1869, Mrs. Johnson, being then a widow, executed a deed to McCoy, to the same land, in confirmation of the former deed of herself and husband to said McCoy.

Lloyd died intestate in 1866, and in 1869 his administrator conveyed block (11) of said subdivision to Bevan P. Jamison. This block 11 contained ten acres in the northeast corner of said subdivision, fronting north and east, according to the plat on Lulu and Broadway streets, designated therein, and was marked on the recorded plat as the "Mansion House" property

of A. J. Lloyd. In 1870, Mrs. Catherine E. Johnson having remarried, executed with her husband a deed of conveyance to this block 11 to said Jamison, reciting in said conveyance that it was in confirmation of the title of said Jamison to said lot from her through McCoy, under the defectively executed deed from her and her husband to McCoy.

At this time, and for some years afterward, the lands lying north of this Lloyd tract for over a quarter of a mile, to the old Shawnee road, were open, unimproved "commons," and people would occasionally pass over these commons in going to the Shawnee road from Broadway, and in going down to the west bottoms of the Kaw river. This strip or street was never worked or improved in any way, nor recognized as a highway by the county or the public, other than by such occasional travel over it in connection with said commons, until after the lands of which it was a part were taken inside the limits of Kansas City, in the year 1885, as hereinafter stated.

Jamison died intestate in possession of this property (block 11, A. J. Lloyd's subdivision), and in 1882 his widow and heirs-at-law subdivided the same in partition and filed a plat thereof called "Jamison's Subdivision." By this plat said ten acres is divided into lots, blocks, streets, and alleys, and Lulu street is laid out and designated as the street running on the north side thereof, twenty-five feet in width, from Broadway to Summit street, the same as in Lloyd's plat.

After the plats of these subdivisions had been recorded, the property therein was thereafter assessed by the county assessor, according to the plats, and the same was sold and conveyed by numbers of the lots and blocks, as designated on the plats.

In the year 1881, George H. Winn became the

owner of a piece of property on the north of and adjoining Lloyd's subdivision, fronting one hundred and one feet on said Broadway street, and running west two hundred and fifty-eight feet on said Lulu street, and from thence northeastwardly to the place of beginning, and erected a flouring mill thereon, and in 1882 the plaintiff became the owner thereof and ever since then has used said property for milling purposes. This property of plaintiff, the Kansas City Milling Company, is no part of A. J. Lloyd's subdivision, but adjoins it on the north and on the north line of the twenty-five feet of ground designated on the plat of that subdivision as Lulu street.

At the time of the purchase of this property by plaintiff, and prior thereto, defendants had built a dwelling house and shed room attached on this strip of ground, claiming to use and occupy the same as a home from the time it was first built, and they continued to live therein up to and until the final judgment in this case. This house of defendants was fourteen feet by twenty-eight feet in size, was built in March, 1879, and occupied a portion of said strip designated as Lulu street, about one hundred and eighty feet west of Broadway, and about sixteen feet south of the mill of plaintiff.

Defendants had no deed or other written claim to the ground on which their house stood, when they first went on the property, nor at any time afterward. They always claimed the place as home, and have had the peaceable, continuous, and exclusive possession thereof, up to the bringing of this suit, from March, 1879, to July, 1891, when the judgment was rendered herein.

There are two railroad switches on the strip on Lulu street, one on the north and the other on the south of defendant's house, and they connect with the Belt Line Railway a short distance west of the house

where there is a network of railway tracks crossing Lulu street, and completely blocking travel on the street in that direction. This Belt Line Railway was built in 1879, after defendants built their house in said street, and one of these switches was constructed after the erection of the mill on plaintiff's property, and has been, since its construction, in constant use by the milling company in its business connected with the mill.

The property embraced in "Lloyd's Subdivision" was, at the time of such subdivision, and until the year 1885, outside of the corporate limits of Kansas City, not adjoining thereto, and not included in any city, town, or village until said year 1885, when the corporate limits of said city were extended from Twentieth street south to include and take inside of the limits of said city all of said A. J. Lloyd's subdivision, and ever since then said premises have been and now are within the limits of said Kansas City.

It appears from the evidence that defendants put their house in the street intending to stay there as long as they could, and for the purpose of saving rent, and to avoid the payment of taxes; that not until about a year before the commencement of this suit, to wit, July 14, 1890, did defendants claim title to the ground upon which their house stood; that Mr. Mitchenor, holding possession of the land now known as Jamison's subdivision, and acting for Bevan P. Jamison, the then owner of the ten acres adjoining Lulu street on the south, and opposite to the Kansas City Milling Company's property in 1870, moved back, southward, the old fence to the south line of Lulu street and built a fence on said south line from Broadway to Penn street; that he did so for the purpose of opening Lulu street at that time; that the said Lulu street was used from that time as a passageway for teams and persons from

Broadway to what was then known as the Shawnee road, now known as the Southwest boulevard; that, although, after the Belt Line was graded across it, the street was cut in two by the Belt Line, yet after that the Kansas City Milling Company and the owners of the property on the south side of Lulu street near Broadway and others, used said Lulu street as a public highway for ingress and egress to and from their premises, and have ever since so used it; that a small part of Lulu street between Penn street and the Belt Line has never been graded, but west of Penn street it has been graded and paved, and is a street fifty feet wide.

Defendants' house is located in Lulu street, four and nine tenths feet south of the south line of the milling company's property, and a distance of about seven feet between defendants' house and the railway track of the Belt Line, on the premises of the milling company, about one hundred and forty feet from the east line of plaintiff's lot and about one hundred and twenty feet from the west end of plaintiff's lot. A number of witnesses testified that a wagon could be driven between Riley's house and the milling company's property, supposing that the south line of the Belt Line track and the south line of the milling company's property were the same. The evidence, however, shows that the south line of the track was three feet north of the south line of the milling company's property; that ever since the mill was built, Lulu street east of the Belt Line to Broadway has been used as a public highway by the said milling company, and by the owners of the property on the south side of Lulu street for ingress and egress to their respective properties.

The common council of Kansas City, on February 10, 1888, passed an ordinance granting the right to Drury and others to maintain and build a switch on

Lulu street, and said council, on June 3, 1887, passed an ordinance establishing the grade of quite a number of streets, and among the rest establishing the grade of Lulu street as laid out on A. J. Lloyd's subdivision and Jamison's subdivision, at its intersection with Broadway, Washington, Penn, and Summit streets.

Since the platting of A. J. Lloyd's subdivision, neither the county of Jackson, nor Kansas City, has ever taxed Lulu street, or in fact any of the streets laid out and dedicated by said plats.

There was a track running across the milling company's property, which encroached a little on Lulu street at its intersection with Broadway, but this was not the track of the milling company, but that of the Belt Line, and was put in there by the Linseed Elevator Company, but it was used by the milling company as well as the Linseed Elevator Company.

It further appears from the evidence that the administrator of the estate of A. J. Lloyd, deceased, and the heirs of said deceased, ratified said A. J. Lloyd's subdivision by paying taxes on the property described according to said subdivision since 1868, and by selling the property described according to said plat; that the plat to Jamison's subdivision was in accordance with the statutes of 1879, and that his heirs afterward recognized this plat by deeding and leasing lands described as lots and blocks in said subdivision.

Defendants' first insistence is that the dedication of Lulu street by A. J. Lloyd in 1866, was not a valid statutory dedication because he was not at that time the owner of the property sought to be dedicated, and the subsequent acquisition of the title did not make the dedication valid or effective as a statutory dedication, or make said street a public highway without an acceptance of it by the public as such highway.

No one other than the owner of land in fee can dedicate it to public use, and as Lloyd did not have the legal title to the land at the time he subdivided the east half of the southeast quarter (less ten acres off the north end) of section 7, township 49, of range 33, into lots and blocks, and filed a plat of said subdivision in the recorder's office of Jackson county, Missouri, on May 24, 1866, it was ineffectual as a statutory dedication of the streets designated on said plat notwithstanding he was in the actual possession and occupancy of the land at the time. *McShane v. Moberly*, 79 Mo. 41; *Hannibal v. Draper*, 36 Mo. 332; 5 Am. and Eng. Encyclopédia of Law, 398, and authorities cited.

The same rule applies in the statutory dedication of land for a street, that does in the conveyance of land by deed. The dedicator can not pass by dedication what he does not own any more than a grantor in a deed can pass the title to land which he does not own in fee, and no one not holding under the dedicator is estopped to deny his title to the property thus attempted to be dedicated.

Nor do we think the dedication by Lloyd was valid as a common law dedication to the county, for the reason that the evidence does not show sufficient acts of acceptance by the public authorities of the county or user by the public of the strip of ground as a public highway. Unless the intent of the owner to dedicate is clearly shown, to constitute a valid common law dedication of land for a public road there must be some evidential acts of acceptance by the authorities having control of the same, or user by the public for ten consecutive years, with the knowledge of the owner, from which it will be presumed that he acquiesced in such use. *Vossen v. Dautel*, 116 Mo. 379; *State v. Young*, 27 Mo. 259; *State v. Walters*, 69 Mo. 463; *State v.*

*Wells*, 70 Mo. 635; *Price v. Breckenridge*, 92 Mo. 378.

But when the intent to dedicate clearly appears,· acceptance may be established by user for a period less than ten years, depending upon the purpose and extent for which used. *Buschmann v. St. Louis*, 121 Mo. 523; *Heitz v. St. Louis*, 110 Mo. 618.

There can be no question as to Lloyd's intention to dedicate the strip in controversy to the public for a street. This is indisputably shown by the facts and circumstances in evidence, and, although at the time of platting the ground into lots, blocks, streets, and alleys, it was not adjacent to or within the city limits of Kansas City, and he did not hold the legal title to the ground, by reason of which such dedication was not effective as a statutory dedication, yet when Mrs. Johnson, in 1869, conveyed the legal title to McCoy under whom Lloyd derived title, the title thus conveyed inured to the Lloyd title. And after his death Lloyd's heirs, and legal representatives in various ways approved and confirmed this dedication, especially the ·administrator of his estate, who sold and conveyed by deed the ten acre lot being block 11 on the Lloyd plat which was reserved by Lloyd as a homestead, to Jamison the purchaser, in which said deed Lulu street is recognized as the northern boundary line of said block.

Moreover, in 1882, Jamison's widow and heirs laid off into lots and blocks and platted this same ten acre lot, block 11, as being bounded on the north by said street, and lots were sold in accordance with the plat, and when the city on July 21, 1885, extended its corporate limits, so as to include Lloyd's subdivision, and from that time on assumed control of the street by and with the knowledge and consent of the heirs of Lloyd and in 1887, by ordinance gave permission to lay a railway on the street, and again in 1888, passed an

ordinance establishing the grade of Lulu street at its intersection with the cross-streets between Broadway and Summit streets, taxed the lots and blocks and not the streets, it thus by acts susceptible of but one meaning accepted the dedication of Lulu street as a public street, and consummated that which was as to Lloyd a common law dedication.

The evidence does not sustain the theory of ten years' adverse possession by defendants. It plainly appears from Riley's own evidence that he did not build his house in the street with the intention of holding the ground occupied by him adversely as against the owner, and that he did not determine to do so until about twelve months before the beginning of this suit. The evidence is quite conclusive that his purpose in building in the street was to avoid the payment of rent and taxes, and that the idea of claiming the ground as his own was an afterthought. The statute of limitations did not begin to run in favor of defendants until they determined to hold the ground occupied by them adversely.

While it is true that before plaintiff can maintain this suit it devolves upon it to show that the strip of ground occupied by defendants is a part of Lulu street, and that the company has been specially damaged thereby by being cut off from convenient access to and egress from its property, it is perfectly clear to our minds from the evidence adduced that the strip of ground in question is a part of Lulu street; and that access to plaintiff's property and egress therefrom are greatly interfered with by reason of the close proximity of defendant's property thereto, and makes out a case which entitles them to the relief for which they ask. The judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.