IDA DRIMMEL, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, May 4, 1914.

1. NEGLIGENCE: Municipal Corporations: Public Streets Dedication. Condemnation, dedication by deed or under the statute, and prescription are not the only methods by which a street may be dedicated to public use as such. It may be done by a valid common law dedication, that is, by acts *in pais* which evince an intention on the part of the owner to dedicate.

2. ———: ———: ———: Common Law Dedication and Prescription. To constitute a common law dedication no particular formality is required; it may be made by any act of the owner showing an intention to dedicate which is the vital principle in dedication. Time is not an indispensable element because if the dedication is accepted and used by the public in the

manner intended the dedication is complete, precluding the owner from revoking the dedication. Throwing open land to public use as a street without other formality is sufficient to establish the fact of dedication and if individuals, in consequence of this act, become interested to have it continue so, as by purchasing property abutting thereon, the owner cannot resume it. Whether a common law dedication has been made is, therefore, a conclusion of fact to be drawn by the jury from the circumstances. The difference between common law dedication and prescription lies in the ingredient of time. To establish dedication by prescription in this state user for ten years, with the knowledge of the owner, must be shown. Nothing short of that will suffice.

3. ————: ————: ————: **Acceptance.** Dedication of a street to public use does not bind the city to accept it and become responsible for its maintenance. That burden is not imposed upon the city until it has in some way, either expressly or by implication, recognized it as a city street and invited the public to use it as such.

4. ————: ————: ————: ————: **Duty to Repair.** Where there is evidence from which a valid common law dedication may be inferred, then if there is also evidence from which the city's recognition of that street as a city street and its invitation to the public to use it as such can be implied, the mere fact that such common law dedication may not have existed for ten years will not relieve the city. It is only where there is nothing to show an intent on the part of the owner of the land covered by the street to dedicate, that there must be user for ten years to supply the lack of such evidence of intent. But where the intent to dedicate clearly appears, acceptance may be established by user for a period of less than ten years depending upon the purpose and extent for which used.

5. ————: ————: **Question of Street or no Street for Jury.** Where there is evidence tending to show a valid common law dedication plus evidence from which it appears that the city has, expressly or by implication, invited the public to use it as a street, this is sufficient to take the question of street or no street to the jury.

6. ————: ————: ————: **Evidence.** The evidence tending to show a valid common law dedication of the street, and to show that the city has recognized it as such and has invited the public to use it, examined and *held* sufficient to take the case to the jury on the question of street or no street.

7. ————: ————: **Defective Sidewalk: Duty of City to Repair.** Where a street has been made such by a valid common law dedication and the city has recognized the street and invited

the public to use it, and a sidewalk at the place of injury has been built, no matter by whom, the city is bound to see that it is kept in reasonably safe condition to travel.

8. DAMAGES: Place of Injury: Instructions. Where the context of an instruction clearly shows that the place in the street referred to is that mentioned in the pleadings and the evidence, and there is no doubt about it occurring at said last named place and not elsewhere, an inadvertent reference to the place of injury as being between Thirty-ninth and Fortieth streets instead of between Thirty-eighth and Thirty-ninth streets, is a mere clerical error and harmless.

9. ———: ———: ———: Reasonable Time to Learn of De· fect and Also Reasonable Time to Repair. Where all the evidence is to the effect that, if a defect in a sidewalk exists at all, it has existed for such a long time that the city can be said, as a matter of law, to have had a reasonable time in which to learn of the defect and also to have repaired same, an instruction need not contain an additional clause requiring the jury to find that the city must also have had a reasonable time to repair after learning of the defect. It is only where there is some evidence showing, or from which an inference may be drawn, that the defects may have existed so recently as not to have given the city reasonable time to both learn of the defect and repair it, that an instruction must contain this additional requirement.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Judge.

AFFIRMED.

*A. F. Evans* and *F. M. Hayward* for appellant.

(1) The court erred in refusing defendant's instruction in the nature of a demurrer to the evidence because there was no evidence that plaintiff fell on a public street. State v. Young, 27 Mo. 259; Ely v. St. Louis, 181 Mo. 723; Benton v. St. Louis, 217 Mo. 687; Milling Co. v. Riley, 133 Mo. 574; Hemphill v. Morehead, 162 Mo. App. 566; Colton v. Kansas City, 162 Mo. App. 429. (2) The court erred in giving instruction 1 for plaintiff: (a) Because such instruction in respect to the place where plaintiff fell being a public

street is not supported by either the pleadings or the proof. Smoot v. Kansas City, 194 Mo. 513; Knight v. Kansas City, 113 Mo. App. 561; Hufft v. Railroad, 222 Mo. 286; Black v. Railway Co., 217 Mo. 672; Bank v. Murdock, 62 Mo. 70; Mansur v. Botts, 80 Mo. 651; Haynes v. Trenton, 108 Mo. 123. (3) Because such instruction fails to tell the jury that defendant was entitled to a reasonable opportunity after knowledge of the defects in the sidewalk in which to repair it. Richardson v. Marceline, 73 Mo. App. 360; Ballard v. Kansas City, 126 Mo. App. 541; Pearce v. Kansas City, 156 Mo. App. 230; Maus v. Springfield, 101 Mo. 613; Badgley v. St. Louis, 149 Mo. 122.

*J. K. Stickney, L. A. Laughlin,* and *Davis & Holmes* for respondent.

(1) A clerical error in an instruction readily discovered upon reading it constitutes no ground for reversal. Shortel v. St. Joseph, 104 Mo. 114; Trustees v. Hoffman, 95 Mo. App. 488; Lucas Market Bank v. Goldsall, 8 Mo. App. 595; Lin v. Railroad, 10 Mo. App. 134; Suttie v. Aloe, 39 Mo. App. 38; State v. Meals, 184 Mo. 244; Day v. Dry Goods Co., 114 Mo. App. 479; Packing Co. v. Mertens, 150 Mo. App. 583. (2) Instruction No. 1 failed to tell the jury that defendant was entitled to a reasonable opportunity after knowledge of the defects in the sidewalk in which to repair it. Ford v. Kansas City, 181 Mo. 137; Elliott v. Kansas City, 174 Mo. 554, 559; Wright v. Kansas City, 187 Mo. 678, 693.

TRIMBLE, J.—A suit against the city for injuries sustained by a fall caused by a defective sidewalk. Plaintiff is a married woman, and, at the time of her fall, was living with her husband and family at 3817 State Line street in Kansas City, Missouri. The line between the states of Kansas and Missouri is in the middle of the street and from this fact comes the name

State Line street. Plaintiff lived on the east or Missouri side of said street.

There is no dispute over the fact that plaintiff fell and was injured on a defective plank sidewalk. This sidewalk was in front of plaintiff's residence. There was evidence tending to show that the walk had been in a dilapidated condition for a long time. It had been built more than eight years prior to the injury. One witness testified to its defective condition one month before the accident, another said it had existed for a year and still another said such condition had existed for two years prior to plaintiff's hurt. During the month next preceding the plaintiff's fall, the walk had sunk down on the side next to the property line leaving the walk in a slanting position. Plaintiff had not been out of the house during this month having been confined to her room with an attack of measles.

There was a demurrer to the evidence which the court overruled. The jury awarded $1500 and defendant appealed.

The first and principal contention made by defendant is that there was no evidence that the street at the point where plaintiff fell was a public street of the city in the sense that the city was under any obligation to keep it in reasonably safe repair. Stated a little more clearly, the contention is that there is no evidence that the city had accepted the street in controversy or that it had exercised such jurisdiction and control over it as imposed upon the city the duty of keeping it in repair and rendering it liable for a failure so to do. The evidence did not show just how State Line street was originally established. There was no proof of condemnation nor of a statutory dedication, nor was the evidence sufficient to establish the street by prescription because those who testified were not acquainted with the street long enough prior to plaintiff's fall, their knowledge lacking a few months of covering the necessary ten years user by the public.

Defendant contends that the only method of creating a street are by condemnation, dedication by deed or under the statute, and by prescription. And that since there is no evidence of the first two methods, no street was shown to have been established as the time covered was not long enough to create one by prescription. It is true mere user *alone* for any period short of ten years will not create a street by prescription. But we do not agree with defendant that the above enumerated methods are the only ways in which an owner of land may dedicate it to public use as a street. He may do so by a valid common law dedication, that is, by acts *in pais* which evince an intention on his part to dedicate. [Meiners v. City of St. Louis, 130 Mo. l. c. 284.] No particular formality is necessary; it may be made by any act of the owner showing an intention to dedicate which is the vital principle in dedication. Time is not an indispensable element because if the dedication is accepted and used by the public in the manner intended the dedication is complete, precluding the owner from revoking the dedication. Whether a common law dedication has been made is therefore a conclusion of fact to be drawn by the jury from the circumstances of each particular case. [9 Am. & Eng. Ency. of Law (2 Ed.), 34.] The throwing open of land to public use as a street, without other formality is sufficient to establish the fact of dedication to the public, and if individuals, in consequence of this act, become interested to have it continue so, as by purchasing property abutting thereon, the owner cannot resume it. [Abbott v. Mills, 3 Vt. 521.] All that is required is the assent of the owner and the use of the premises for the purposes intended by the appropriation; the law creates out of the owner's act, in such case, an estoppel *in pais* and precludes him from revoking the dedication. [Morgan v. Railroad, 96 U. S. 716.] The difference between prescription and common law dedication lies in the ingredient of time. To

establish dedication by prescription in this state, user for ten years must be shown and nothing short of that will suffice; but a valid common law dedication may be shown by an act of dedication and of the *animus dedicandi* without reference to the period of use. [22 Am. & Eng. Ency. of Law (2 Ed.), 1186. For example, opening on the ground a street or highway and selling lots fronting upon such street and which are accessible only thereover will constitute a common law dedication of the land covered by the highway to public use, irrevocable so far as the purchasers of the lots are concerned and also irrevocable so far as the general public is concerned because the rights acquired by third persons under such a common law dedication will operate in favor of the public as well as of such lot owners. [Heitz v. City of St. Louis, 110 Mo. 1. c. 624; Buschman v. City of St. Louis, 121 Mo. 536.]

Of course this will not bind the city to accept it as one of the streets of the city and become responsible for its maintenance. That burden is not imposed upon the city until it has in some way, either expressly or by implication, recognized it as a city street and invited the pubic to use it as such. We do not mean to intimate that the city can be held liable in the absence of such evidence. What we have reference to here is that where there is evidence from which a valid common law dedication of a street can be reasonably inferred, then, if there is also evidence from which the city's recognition of that street as a city street and its invitation to the public to use it as such can be implied, the mere fact that such common law dedication may not have existed for ten years will not relieve the city. Of course unless there is something to show an intent on the part of the owner of the street to make a valid common law dedication thereof, there must be user by the public for ten years, with his knowledge, to supply the lack of such evidence. "But when the intent to dedicate clearly appears, acceptance may

be established by user for a period of less than ten years depending upon the purpose and extent for which used." [Milling Co. v. Riley, 133 Mo. 585.] It is true, in the case just cited a plat had been filed, but as Lloyd had no title to the property, the plat amounted to nothing. The dedication was upheld as a common law dedication.

A way in a city may become a public street by a valid common law dedication, but before the city can be charged with the duty of maintaining it in repair there must be some proof that the city has recognized or accepted it as a city street. [Meiners v. City of St. Louis, 130 Mo. 1. c. 284; Milling Co. v. Riley, 133 Mo. 1. c. 584.] The question is, in such case, has the city manifested a willingness to receive the street as a city street over which it invites the public, either expressly or by implication, to travel. If it has then the city by so doing assumes that relation to the street by virtue of which the law will impose on the city the burden of keeping such street in reasonably safe repair. [Robinson v. Kansas City, decided by this court, April 6, 1914, and not yet reported.] As said in the Meiners case, "No formal acceptance by the corporate officials, however, is necessary. And such acceptance is sufficiently indicated in many cases by showing that the way as dedicated was thereafter opened, accepted, and continuously used by the public as a common public thoroughfare. [Rose v. City of St. Charles, 49 Mo. 509; Baker v. Vanderburg, 99 Mo. 378; Maus v. City of Springfield, 101 Mo. 613; Garnett v. City of Slater, 56 Mo. App. 207.] The proof of such acceptance becomes more satisfactory when the way has been used as a public street, has been occupied and built up to as only public streets are used and builded to, for *many years*, and has become a well known, generally recognized, and much traveled thoroughfare as was the one in question in this case, as to which the fact of acceptance may be said to have been established beyond ques-

tion by the further proof that the street as thus dedi-
cated, opened and used was expressly recognized and
adopted by the corporate authorities, by ordinances
fixing its grade, and extending it as dedicated, by con-
demnation over other lands.'' From which it appears
that the acceptance, or adoption, or recognition by the
city of the street as a city street does not have to be
shown in a particular way but may be shown in many
ways. This proof becomes ''more satisfactory'' when
the way has been used, occupied and built up to as only
public streets are used and builded to, and the fact of
acceptance may be ''established beyond question'' when
it is expressly ''recognized and adopted by the corpo-
rate authorities by ordinances fixing its grade, etc.''
The same thought is expressed in Benton v. St. Louis,
217 Mo. l. c. 703 where it is said, ''An acceptance of a
dedicated street may be either express or implied. It
may be conceded to respondent that no express ac-
ceptance is shown, but we think an implied one was
made out.'' The term ''dedicated street'' as here used
does not refer solely to a street created by prescription
or by statutory dedication because on page 701 the
learned judge clearly shows that although the ''ques-
tion of a street by *prescription* is in the case, yet it
would be unprofitable to consider it, because the ques-
tion of *dedication* seems uppermost and controlling''
(italics ours). And by dedication here meant is a com-
mon law dedication because the learned judge proceeds
to say, ''Speaking to that question in the light of the
facts, there ought to be no doubt that the *animus dedi-
candi* existed; that is, that the abutters intended to
dedicate the street for public use from side to side fifty
feet wide. This conclusion, we think, reasonably fol-
lows from facts established by proof. For example,
permanent fences, long maintained on either side, ear-
mark a public street. Again, the fact that these fences
are practically in line with the north and south fences
of the continuation of Bruno Avenue adds strength to

that idea.  In the next place, the practical abandonment of the whole fifty-foot strip for many years by the abutting property owners and their failure to impress upon the strip the usual earmarks of private use and ownership, like possession, alienation, cultivation, etc., lend force to the conclusion by leading up to it. Especially so when such abandonment seems related and responsive to the public need of a street at that point because of the distance away of parallel streets and the number of people to be accommodated by a thoroughfare there.''  And a careful examination of the facts in that case will disclose that there was no statutory dedication nor condemnation of that part of Bruno avenue where the defect causing the injury was located.  Neither was there a dedication of *that part* of Bruno avenue by deed, as one might naturally assume from a casual reading of the case.  Bruno avenue was originally dedicated by deed, but was only thirty feet wide.  Ten feet of this on the south side was inclosed by the property owners.  A strip twenty feet in width on the north of the remaining deeded twenty feet and adjacent thereto marked ''private road'' and an additional ten feet along the north side of that marked ''George W. Campbell'' formed the fifty feet of the street claimed by plaintiff Benton to be a public street. And the drowning of the little boy occurred on *the north side of this strip.*  So that the *locus* of the defect was not on the part dedicated by deed, and although there may have been evidence of user long enough to create a street by prescription, yet the learned judge does not place his decision on that ground but on the question of *dedication.*  This does not require that such dedication must have existed for ten years, but if there is evidence of common law dedication on the part of the owner, and of acceptance, either express or implied, on the part of the city, then this is sufficient to submit the question to the jury.

Drimmel v. Kansas City.

It, therefore, appears that notwithstanding there may not be evidence of user for a time long enough to create a street by prescription, yet where there is evidence tending to show a valid common law dedication *plus* evidence showing a recognition, acceptance or adoption, of the street, or an exercise of jurisdiction thereover by the city (whatever term you may choose to call it), from which it appears, either expressly or by implication, that the city has invited the public to use it as a street, then this is sufficient to take the question of street or not street to the jury.

We think there was sufficient evidence to cover both of the matters above indicated. There was evidence tending to show a valid common law dedication which could not be retracted by the original owner of the street even though the ten years necessary to create adverse possession on the part of the public had not elapsed. The street had been thrown open to the public from property line to property line, lots owned by different persons had for years fronted upon and abutted the street. The street was built up to as in any ordinary street. Dwelling houses, properly numbered, stood side by side facing the street. A sidewalk was along one side of the street at least, the east side where the fall occurred. The street and sidewalk were used not only by the persons whose houses fronted thereon but by the public generally. A policeman of the city walked it as a part of his beat. It had been known for years as State Line street. These things are not mentioned here to show that the city had accepted or adopted the street and had assumed liability for its condition by inviting the public to travel it as a city street, but to show that even if the original owner of the land covered by the street did not dedicate it by deed or plat and even if ten years limitation has not run against him, there is evidence to show a valid irrevocable common law dedication on his part, which has been accepted by the public. If now there is added

to this, evidence tending to show that the city has, either expressly or by implication, invited the public to use it as a city street, then the evidence is sufficient to submit the question of the city's liability to the jury, and in that case its answer to that question must be accepted.

The city, by an ordinance passed July 27, 1907, established the grade on this street from the south line of Thirty-fifth street north to the north line of Thirty-ninth street which included the place of injury as it occurred on State Line street between Thirty-eighth and Thirty-ninth. In this ordinance the street in question is referrred to as State Line street. It is true, if the mere passage of this ordinance were the sole fact relied upon to show acceptance or invitation to use the street on the part of the city, we would hold, under the doctrine of Atkinson v. Nevada, 133 Mo. App. 1, that such act alone would not be sufficient. In that case there were no other facts from which an invitation could be implied. The street in question was in an addition platted, but sparsely settled and until a few months before the injury was vacant and unfenced. The land adjoining the street in question was a pasture and the injury complained of was caused by the horse leaving the travelled road and coming into contact with the fence on the side of the street as platted and inclosing this pasture. There were no other facts either of acts of the city or of appearances on the ground from which a traveller would be led to believe that the city had invited him to travel the street. The court, by quoting from Meiners v. City of St. Louis, 130 Mo. 274, shows that the street had not been occupied and built up to for years as a street usually is, and had not "become a well known, generally recognized and much travelled thoroughfare" and was not therefore within the rule announced in that case. And, therefore, Judge Johnson, who wrote the Atkinson case, said there must be something further shown from which might be implied

an invitation to the public to use it. But, in the case at
bar there were other things shown. The street had
been in use for nearly ten years, and the inference is
that it had been in use longer because one witness said
she knew it from October 1, 1900, which lacked only
two months and 22 days of being ten years before the
accident and that when she first knew it a sidewalk was
there and the street was in use. There were houses,
properly numbered, built side by side as in any other
street. The street was included in the regular beat
assigned by the city to one of its policemen, and he re-
ported defects along this street though he reported
none at this particular spot. Some grading had been
done on State Line south of Thirty-ninth street, but
none was done at the point of the accident, and none
would be done for the very good reason that there the
surface of the street coincided with the grade as estab-
lished by the city. From Thirty-ninth to Fortieth the
city had built a sidewalk which was evidently a continu-
ation of the walk between Thirty-eighth and Thirty-
ninth where the plaintiff's fall occurred. Taking all
these facts and circumstances into consideration we
think they were sufficient to justify any one in think-
ing the street was under the control and dominion of
the city and opened for travel thereon. Such facts are
sufficient, therefore, to justify the jury in finding that
there was an implied invitation on the part of the city
to use the street. It is true, it does not appear by
whom the grading was done and there is some evidence
that the city did not do it. Nor is it shown by whom
the sidewalk, at the point in question, was built,
whether by voluntary action of those living on the
street or by order of the city, is not shown. Nor is it
material who built it, since if the street was a public
street of the city and a walk is placed thereon, the city
is bound to see that it is kept in reasonably safe condi-
tion for travel. [Benton v. St. Louis, 217 Mo. 687, l. c.
700.] The fact that a sidewalk was in existence at the

place of the injury distinguishes this case from those where the accident occurred where the city plainly and clearly had undertaken no work or duty, either expressly or impliedly, of improving the street, such as Ely v. St. Louis, 181 Mo. 723; Curran v. St. Joseph, 143 Mo. App. 618. In the latter case, the injury occurred on the south side where no improvement at all had been made. The court at page 622 says that if the injury had occurred on the north side where a sidewalk had been put down, then the city would have been liable.

The foregoing answers, in large degree, defendant's second objection that plaintiff's instruction No. 1, should not have been given because there was no proof that the place where plaintiff fell was a public street. It is true the instruction in referring to the street and place of plaintiff's alleged fall used the words "State Line between Thirty-ninth and Fortieth streets" when the petition and proof showed it was "between Thirty-eighth and Thirty-ninth streets." But the context showed beyond all question that this was a mere clerical error, and that the place where the fall was pleaded and testified to was meant. The petition stated the fall occurred on the "sidewalk on the east side of State Line between Thirty-eighth and Thirty-ninth streets and in front of premises known as 3817 State Line." Plaintiff testified that it occurred at such point and just south, perhaps a yard or a yard and a half, from the front gate of her premises. She also said that at the place where she fell, in front of 3817, the plank walk was tilted to one side and had a hole in the plank through which her foot and leg went causing her to fall. Other witnesses testified to the same facts and there was no dispute over the fact that she did fall in front of 3817 and that the walk was defective at that point as stated. The instruction complained of referred to State Line street "between Thirty-ninth and Fortieth" and then went on to tell the jury that if it believed from the evidence that "on said

day and for some time prior thereto the plank sidewalk on the east side of said State Line *at said point* was in a defective condition in that it tilted to one side and there was a hole in a plank and if you further find that said defects made said sidewalk not in a reasonably safe condition and that said defects were known to the defendant's officers having supervision of its sidewalks, or that said defects had existed for such a length of time before said day that they might have been known to defendant's said officers if they had used ordinary diligence in the discharge of their duties, in time to have repaired the same before said day, and if you further find that plaintiff while walking over said sidewalk on said day, and exercising ordinary care for her safety was caused to fall on said sidewalk because of said defects and was thereby injured then your verdict should be for the plaintiff.'' This context shows so clearly and unmistakably that the portion of the street referred to was the point where she fell, which was between Thirty-eighth and Thirty-ninth streets where the pleading and all the evidence showed it was, and not between Thirty-ninth and Fortieth streets, that the use of these words were merely clerical errors and could not possibly have misled the jury. The case could not be reversed unless error was committed against appellant materially affecting the merits of the action. [Sec. 2082 R. S. Mo. 1909.] Mere clerical errors readily discoverable upon reading the instruction constitute no ground whatever for reversal. [Shortel v. St. Joseph, 104 Mo. 114, l. c. 121.] Where the jury could not fail to understand what was meant, in view of the pleading and the evidence, a mere clerical error is not ground for reversal. [St. Louis Union Packing Co. v. Mertens, 150 Mo. App. 583.] As no one could be misled into thinking the portion of the street referred to was

any other than where plaintiff fell, the instruction does not tender a false issue, as claimed by defendant.

Objection is also made to said instruction because it failed to tell the jury that defendant was entitled to a reasonable opportunity after knowledge of the defects in the sidewalk in which to repair it. And in support of this objection defendant cites Pearce v. Kansas City, 156 Mo. App. 230; Ballard v. Kansas City, 126 Mo. App. 541. But the facts in this case as to the length of time the defective condition of the sidewalk has existed before the injury make those cases and the rule therein announced inapplicable. Where the evidence shows that a defective condition has existed for a time long enough to enable the city to know of it and to repair it in the exercise of reasonable care and diligence, and there *is no evidence to the contrary,* then the rule announced by the cases just cited does not apply. But if it is uncertain how long before the accident the defective condition existed, or if there is evidence tending to show that it did not exist long enough beforehand to give the city time to both learn of it and repair it, then the rule in the Pearce and Ballard cases applies, and it is necessary that the instruction should be so worded as to give the city not only reasonable time to learn of the defect but also reasonable time in which to repair it before the injury. A careful reading of these cases will disclose the fact that this distinction is stated in them. And the facts in those cases will bear out what is here said. But, when the facts in this case are studied and carefully analyzed, it will be found that the instruction complained of is not open to the objection contained in the Pearce and Ballard cases. Here there was no evidence showing that the defect might have occurred in so short a time as not to allow the city reasonable time to repair. If the defect existed at all it existed long enough to give the city time to discover it and also to repair it if it had exercised reasonable care. And there was no evidence to

the contrary. One witness said the walk was defective for two years, another for one year, and another that the hole had existed for at least a month. A policeman testified that he noticed the condition of the sidewalk on that street and made a report of it to the city but not of any defect directly in front of plaintiff's premises, and did so before plaintiff got hurt. However, as it is not affirmatively shown how long before she got hurt that he reported a bad sidewalk, this is not of itself conclusive. He did, however, say that he had made reports of the same sidewalk at other points; and that the photograph offered in evidence showed the sidewalk in about the same condition as it was when he walked the beat in June and July. The accident occurred on July 9th. The photograph shows that the defective condition is not a hidden one requiring a long time to discover, and also that the bad condition was evidently one of long standing. Inasmuch as the evidence all shows that the city had constructive notice long enough to have given it a reasonable time to repair after such notice, we do not think the instruction should be held invalid on account of the error charged. Finding no reversible error in the case, we must affirm the judgment. So ordered. All concur.