Martin ROSENBLOOM and Bluma Rosenbloom, His Wife, and Herman L. Litwack, and Mildred Litwack, His Wife, Plaintiffs-Appellants,

v.

Sam GROSSMAN and Rebecca E. Grossman, His Wife, Defendants-Respondents.

No. 48571.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1961.

Bernard Susman, St. Louis, for appellants (plaintiffs). William L. Mason, Jr., St. Louis, of counsel.

John Grossman, St. Louis, respondents (defendants).

HOUSER, Commissioner.

This is a suit in equity to ascertain and determine title to real estate, under Section 527.150 RSMo 1949, V.A.M.S., and for a judgment, in accordance with Section 527.-020 RSMo 1949, V.A.M.S., declaring that plaintiffs' Lot 19, Block 22 of University Park in University City, is not bound by a certain recorded instrument in writing purporting to create an easement. Defendants' answer claimed an easement over plaintiffs' lot by the terms of that instrument, and also by prescription, and by necessity. The Circuit Court, declining to pass upon the effect of the written instrument, adjudged that plaintiffs were the fee simple owners of Lot 19, subject to an easement by prescription and a way of necessity in favor of defendants over the east 10 feet of Lot 19, for ingress and egress of automobiles as a driveway; that plaintiffs had no easement over defendants' Lot 20, and enjoined plaintiffs from obstructing or interfering with defendants' use of the easement and

way of necessity. Plaintiffs appealed on the ground that the evidence was insufficient to support the judgment of the trial court; that the judgment creates a cloud on the titles of the lots of the respective parties. Plaintiffs ask for a declaration that defendants have no easement either by agreement, perscription or necessity, and for a dissolution of the injunction.

■ Under the pleadings and the decree of the trial court establishing an easement over plaintiffs' lot, title to real estate is involved, and we have jurisdiction under the Constitution. Jacobs v. Brewster, 354 Mo. 729, 190 S.W.2d 894; Davis v. Lea, 293 Mo. 660, 239 S.W. 823.

■ In an equity action we review the entire record upon both the law and the evidence, and reach our own conclusions as to the facts, determining the credibility of the witnesses and the weight and value to be given the evidence, giving due deference to the findings of the trial chancellor, where proper. Long v. Kyte, Mo.Sup., 340 S.W.2d 623; Anderson v. Abernathy, Mo.Sup., 339 S.W.2d 817.

These are the pertinent facts: Separate apartment buildings were erected on the south side of the 7200 block on Amherst Street in University City on Lots 19 and 20, Block 22, University Park. Lot 19 lies immediately west of and adjoins Lot 20. Two-car garages were erected at the rear of each of the buildings. There is no alley at the rear of the premises. The only access to the garages is a driveway from the front. The distance between the walls of the two buildings is 14 feet. The driveway between the buildings is 14 feet wide. Ten feet of this width lies on Lot 19 and 4 feet of this width lies on Lot 20. From Amherst Street to the building line the driveway is only 10 feet wide. This part of the driveway lies altogether on Lot 19. Ingress and egress to and from defendants' garage over this entrance therefore is impossible without passing over plaintiffs' land. While ingress and egress to and from plaintiffs' garage may

be physically possible without passing over defendants' 4-foot strip and the concrete apron in front of defendants' garage doors, it is not feasible or practical. Rosenbloom's automobile, 15 feet long, could be driven into his garage by driving straight down his 10-foot strip to the wall at the rear of the premises, then backing into the garage, but this would be difficult, awkward and inconvenient. It would be an engineering feat to drive a second automobile into and out of plaintiffs' garage without encroaching upon defendants' 4-foot strip. It is of great advantage to drivers using plaintiffs' garage to have the use of defendants' 4-foot strip and the concrete apron in front of defendants' garage. Sam Grossman and wife were grantees in a deed to Lot 20 dated February 19, 1945, acknowledged February 23, 1945, delivered March 20, 1945, and recorded on March 22, 1945 at 10:40 a. m. Guy C. Chamberlain and wife were grantees in a deed to Lot 19 by deed dated April 18, 1945, acknowledged May 25, 1945, and recorded May 25, 1945. On March 14, 1945, before the delivery of these deeds, the Grossmans and Chamberlains, intending to become next-door neighbors, entered into an agreement, Exhibit 1, which follows:

"Agreement

"Whereas, Samuel Grossman and Rebecca E. Grossman, his wife, are the owners of the following described property situated in the County of St. Louis and State of Missouri, to wit:

"Lot 20 in Block 22 of University Park, a subdivision as recorded in Plat Book 16 pages 38 and 39 of the St. Louis County records. And

"Whereas, Guy C. Chamberlain and Genevieve E. Chamberlain, his wife are the owners of the following described property situated in the County of St. Louis and State of Missouri, to wit:

"Lot 19 in Block 22 of University Park, a subdivision as recorded in Plat Book 16 Pages 38 and 39 of the St. Louis County records. And

"Whereas, there is a driveway between the two parcels of improved property above described serving as entrance to the garages on each property;

"Now, Therefore, in consideration of the mutual benefit to arise to the future owners of said lots, the parties hereto establish and create an easement over the West four feet two inches, more or less, of Lot 20 and over the East ten feet, more or less, of Lot 19 of the above described properties extending, from the front concrete walk to the rear of said lots and over the aprons adjoining the front of the garage doors on the rear portions of said lots, for ingress and egress of automobiles as a driveway for the benefit of the present and future owners of said properties. The owners of the above described properties further agree not to allow parking of automobiles in the area reserved for the joint use of the driveway between the two buildings. The present and future owners agree to divide the expenses for the maintenances or repairs of the driveway in the area between the two buildings from the concrete walk to the rear of said lots.

"In Witness Whereof said parties have hereunto set their hands this 14th day of March, 1945.

"Guy C. Chamberlain
"Genevieve E. Chamberlain
       "Samuel Grossman
       "Rebecca E. Grossman"

This instrument, acknowledged in due form, was filed for record with the Recorder of Deeds March 22, 1945, at 10:41 a. m. From the time defendants moved into the property in June, 1945 to the date of trial on May 9, 1960 defendants used the driveway in accordance with the rights reserved under the provisions of Exhibit 1. From 1940 to 1947 a tenant who lived in defendants' building used the driveway, without any special agreement. Servicemen, such as electricians, pickup trucks and grocery trucks, used the driveway through the years. Plaintiffs Rosenbloom and Litwack, and

their wives, became the owners of Lot 19 on May 26, 1953 and moved into the property in June, 1953. Nothing was said about the driveway by the Grossmans or plaintiffs when the latter moved in, but thereafter plaintiffs began to use the driveway for other purposes than ingress and egress to the garage. Rosenbloom parked his car in the driveway at the back door of his house to load and unload things. A portable plastic swimming pool was placed in the driveway for the use of Litwack's children. Rosenbloom broke the concrete and installed two-inch sleeves or pipes in the driveway to receive removable clothes poles and used the driveway for the hanging of clothes to dry. Grossman protested and in reply Rosenbloom said, "You stay on your side, on your four feet, and we'll do what we want on our ten feet." Both parties consulted counsel and on October 19, 1953 plaintiffs' counsel wrote Grossman a letter demanding the payment of $5 per month for the use of the driveway. Grossman did not pay, continued to use the driveway as before, and thereafter made repairs to the driveway over the major portion of the length of the driveway, "clear across" its 14-foot width, at a cost of $495. Grossman made demand upon plaintiffs for their share of the cost, and upon refusal to pay filed suit against plaintiffs. In that suit plaintiffs counterclaimed in two counts. Count I sought a declaratory judgment declaring the invalidity of the easement. Count II, in the alternative, sought reimbursement from defendants, under the terms of the easement, for one half the sums spent by plaintiffs repairing the driveway. That suit is now being held in abeyance pending the outcome of the instant litigation.

In their brief plaintiffs as appellants first make the point that the evidence was insufficient to establish prescriptive rights in defendants by adverse user, or that the way over Lot 19 was a way of necessity. We do not dwell on the questions whether defendants have prescriptive rights, or a way of necessity, in the use of the east 10 feet of Lot 19, because we are convinced

that the rights of the parties are governed by Exhibit 1.

■■■ While ordinarily easements are created by grant or prescription, they may be acquired by agreement. 17A Am.Jur. Easements, § 27; 28 C.J.S. Easements §§ 23, 28; Jones on Easements, § 104. Where the owners of adjoining lots contract for reciprocal easements which enhance the usefulness and value of their respective properties and entitle each to use the property of the other for the purposes of ingress and egress, as a driveway, "the way is annexed as an easement to their lands, and by a subsequent conveyance by either, his grantee takes the benefit of the right of way which his grantor had, and holds his land subject to the burden imposed by the agreement of the original owners." Jones on Easements, § 104. Easement agreements of this general nature may be enforced in equity by one of the owners, St. Louis Safe Deposit & Savings Bank v. Kennett Estate, 101 Mo.App. 370, 74 S.W. 474, or by a purchaser from one of such owners, against a purchaser from the other with notice. Jones on Easements, § 104, p. 83. The mutuality of the covenants of adjoining landowners thus imposing cross restrictions upon each other's lands is a sufficient consideration for their respective grants. 17A Am.Jur. Easements § 27. "Owners of adjoining lots of land may impose mutual restrictions upon the land of each, and the mutuality of their covenants is a sufficient consideration for their respective grants. Their covenants in such a case are construed as grants of reciprocal easements which may be enforced in equity when the remedy at law is insufficient." Jones on Easements, § 113. Exhibit 1 does not contain the word "grant" but the use of that word is not necessary if the intention to constitute a grant of an easement is manifest. Goddard on Easements, Sixth Edition, p. 152; 17A Am.Jur. Easements § 27. "No particular words are necessary to constitute a grant, and any words which clearly show the intention to give an easement, which is by law grantable, are sufficient to effect that purpose, provided the

language is certain and definite in its terms." 28 C.J.S. Easements § 24, p. 677. The intention of the Grossmans and Chamberlains to establish, create and grant to each other reciprocal easements for their mutual benefit is plain to see by reading Exhibit 1. The description of the land subjected to the servitude is definite and sufficiently precise. The covenants of the parties embrace acts relating to and affecting the use of land, entered into not on a temporary but on a permanent basis, not only for the benefit and to the burden of the parties signatory, but also expressly for the benefit and to the burden of "the future owners of said lots." The intention of the parties to bind their heirs and assigns thus clearly appears. These are covenants running with the land, which are attached to and encumber both lots. Exhibit 1, entered into with all the formalities necessary for the conveyance of land, was recorded, thus giving notice of the encumbrances to all the world. Plaintiffs, subsequent purchasers of Lot 19 with constructive notice that Lot 19 was burdened with an easement, took subject to the easement. Jones on Easements § 118. They are bound by the agreement of their predecessor in title, 17A Am.Jur. Easements § 158, and must fail in their principal contention.

■ Plaintiffs object that the consideration recited in Exhibit 1 ("the mutual benefit to arise to the future owners of said lots") was no consideration at all, because plaintiffs have sufficient access to their garage by using their own 10-foot strip, without using the 4-foot strip in defendants' lot; that there was no benefit to plaintiffs; that plaintiffs' lot was burdened without benefit, and defendants' lot was benefited without burden; that with no mutuality in the agreement, the consideration fails. The whole of the testimony on this issue, considered in connection with the plat of the premises and the several excellent and illuminating photographs of the garage entrances and areaway in question, convinces us that there is no merit in plaintiffs' claim that the easement over Lot 20 confers no

benefit upon them. Grossman testified that people entering or leaving plaintiffs' garage "use the entire portion of the driveway" in getting in and getting out; that "[N]o car can get in or get out from either garage without using the entire apron—my part and their part." Rosenbloom testified that his car is 15 feet long; that the way he entered his garage was to drive straight down the 10-foot strip "all the way to the wall, and back into the garage." Evidently such maneuvering was rarely undertaken, for Rosenbloom only "occasionally" used the garage, "when the weather was bad," and admitted that "here lately" he had been using the garage for storage of materials cleaned out of the basement. Pressed on the question, Rosenbloom could not remember whether he had put his automobile in the garage as many as ten times in the past seven years. We conclude that ingress and egress to and from the garages on Lots 19 and 20 in an automobile is a practical impossibility unless an automobile driver uses the parts of both lots described in Exhibit 1; that the owners of Lot 19 were benefited by the easement, and that the mutual covenants constituted a sufficient consideration.

■ Plaintiffs strenuously object that the parties to Exhibit 1 were mere strangers to the title, neither owning the property at the time of its execution; that an easement, being an interest in real estate, can be conveyed in no other way than "by deed executed by any person having authority to convey the same, or by his agent or attorney * *," under the provisions of RSMo1939, § 3401, in effect at the time of the execution of Exhibit 1; that the burden was upon defendants to prove, but defendants failed to prove, that the Chamberlains were the owners of the property when Exhibit 1 was signed or had authority to sign Exhibit 1 as the agents or attorneys of the owner. Plaintiffs regard Exhibit 1, if valid at all, as nothing more than a mere private agreement between the defendants and Chamberlains, not binding upon plaintiffs. Defendants' answer alleged that the parties who executed Exhibit 1 were the owners of their re-

spective lots on March 14, 1945, the date Exhibit 1 was signed, and claim they made a prima facie case of ownership by introducing Exhibit 1 in evidence. They say the effect of § 3435, RSMo1939, was to make the certificates of the notaries who took the acknowledgments of the signatures on Exhibit 1 "evidence of all the facts recited therein," including the recitals of ownership, citing Sanders v. Kaster, Mo.Sup., 222 S.W. 133. The difficulty with this is that there was evidence that the warranty deed by which defendants took title, although executed prior to March 14, 1945, was not delivered until after that date, and that the warranty deed by which the Chamberlains took title was not executed until April 18, 1945. Delivery is essential to the validity of a deed, which takes effect from the date of delivery and not from the date of execution. Sando v. Phillips, Mo.Sup., 319 S.W.2d 648. Presumably Lots 19 and 20 were owned by the grantors named in those deeds, and they may be presumed to have intended to convey land to which they had title. 26 C.J.S. Deeds § 100b., 26A C.J.S. Deeds § 182f. Looking at the facts realistically, we conclude that the Grossmans and the Chamberlains did not have title to Lots 20 and 19 when they executed Exhibit 1. This, however, is not the end of the matter. Contracts are expressions of the intentions of parties, and although the parties did not actually have title on March 14, 1945, they nevertheless clearly evinced an intention to burden the lots with the easements after they acquired title, Albers v. Acme Paving & Crusher Co., 196 Mo.App. 265, 194 S.W. 61, 70, and the after-acquired title would be sufficient. In Kansas City Milling Co. v. Riley, 133 Mo. 574, 34 S.W. 835, one who did not actually hold legal title subdivided certain lands and undertook to dedicate streets by the filing of a plat. It was held that although this was ineffectual as a statutory dedication of the streets, a subsequent conveyance which cured the defect in his title enured to his benefit and cured the defect in the dedication of the streets. In Wells v. North East Coal Co., 255 Ky. 63, 72 S.W.

2d 745, the court treated a like problem in this manner, 72 S.W.2d, l. c. 747: "But we perceive no reason why as between the parties there may not be an agreement or contract to grant an easement appurtenant to property to be acquired in futuro, which, as between the parties and their privies with notice, is enforceable when the dominant tenement is acquired, just as a mortgage covering after-acquired property is good as between the parties and their privies with notice. See United States Cast Iron Pipe & Foundry Co. v. Henry Vogt Machine Co., 182 Ky. 473, 206 S.W. 806. Therefore, conceding that the property from which the coal is now being taken was not in the ownership of Mayo at the time of the Burchett deeds, yet, when such land was acquired, as between Burchett and her privies with notice, appellant being such, and Mayo and his privies, the easement attached thereto by virtue of the Burchett deed." So we construe Exhibit 1 as an agreement to grant easements appurtenant to lots to be acquired in the future. While it had no effect upon the title before delivery of the Grossmans' and Chamberlains' deeds, the easements attached to the respective lots upon the occurrence of these events. And Exhibit 1 having been recorded, the easements were binding upon Chamberlains' subsequent grantees, including plaintiffs.

Accordingly, the judgment of the circuit court is affirmed insofar as it (1) finds that plaintiffs are the fee simple owners of Lot 19, subject to an easement; (2) describes the easement; (3) finds that defendants are the fee simple owners of Lot 20; (4) grants injunctive relief; and (5) assesses the costs against plaintiffs, but is reversed insofar as it (a) finds that defendants' rights rest in prescription or necessity; (b) finds that plaintiffs had no easement over Lot 20, and (c) fails to declare the rights of parties under Exhibit 1; and the cause is remanded with directions to the circuit court to set aside its judgment and decree of August 24, 1960 and enter a new judgment and de-

cree as of that date consistent with the views expressed in this opinion.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.