Buschmann v. The City of St. Louis.

---

BUSCHMANN *et al.*, *Appellants*, v. THE CITY OF ST. LOUIS *et al.*

Division Two, May 8, 1894.

| 121 | 523 |
| 125 | 515 |
| 121 | 523 |
| 128 | 17 |
| 121 | 523 |
| 130 | 284 |
| 121 | 523 |
| 133 | 585 |
| 121 | 523 |
| f156 | 66 |
| 156 | 68 |
| 121 | 523 |
| 157 | 88 |
| 121 | 523 |
| 165 | 231 |

1. **City:** STREETS: DEDICATION. When the owner of property which lies within the limits of an incorprated city or town, makes and records a map of such property by which he subdivides the same into blocks and lots bounded by streets which are continuations of other streets already laid out by the city or town and sells and conveys the lots abutting upon those streets, he thereby dedicates to the public the streets so laid out by him as prolongations of other streets, as well as the other streets which are laid out upon such map intersecting and connecting the same.

2. ———: ———: ———. A statutory dedication of property to a city is valid and irrevocable, although not expressly accepted.

3. ———: ———: ———. The payment of taxes will not rebut a clear intention to dedicate property to the public.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*Lubke & Muench* for appellants.

(1) The trial court erred in refusing the plaintiffs' instruction marked 1, and in giving the instruction of its own motion, holding that by the plat of October 18,

1867, the land here sued for was dedicated under the statute of the state. *First.* The land in question was not included in the subdivision made by the plat. *Second.* The instrument of dedication, written upon its margin named only the "streets and alleys." *Third.* The parcel in question is a blank upon the face of the plat, is unnamed, and appears only as an outlying piece, the same as the rolling mills and the reservoir property. *Fisher v. Carpenter*, 36 Kan. 184; *Mayor v. Stuyvesant*, 17 N. Y. 34; *Cook v. Village, etc.*, 7 Michigan, 115; *Robinson v. Coffin*, 6 Pac. Rep. 41. (2) There being no statutory dedication, the court also erred in refusing plaintiff's instruction number 5. Defendants admitted that plaintiffs would be entitled to recover, unless defendants could prove a valid dedication by plaintiffs of the ground sued for. The defendants failed in this. A common law dedication operates by way of estoppel. Elliott on Roads and Streets, p. 87. 2 Dillon on Municipal Corporations, p. 625. The intention to dedicate must clearly appear and is rebutted by evidence of acts indicating retention of ownership. *Baraclough v. Johnson*, 3 Nev. & P. 233; 2 Dillon on Municipal Corporations, sec. 636, and note 4. Acceptance of a common law dedication is essential. *Kemper v. Collins*, 97 Mo. 644; *Moore v. Cape Girardeau*, 103 Mo. 470. Recitals in a deed are not sufficient. *In matter of Lewis street*, 2 Wend. 472; *Smith v. Lack*, 18 Mich. 56; *Wiggins v. McCarty*, 49 N. Y. 346. There was no estoppel shown in the case at bar against plaintiffs in favor of these defendants. *Noyes v. Ward*, 19 Conn. 265. (3) The recitals in the three deeds in evidence are not available to defendants as estoppel in view of the previous ordinance of the city which promised compensation to plaintiffs for this wharf property. See Pennsylvania cases, viz: *In the matter of Brooklyn St.*, 12 Atlantic Reporter (Pa.), 664; *In the matter of Wayne*

*Av.*, 16 Atlantic Reporter (Pa.), 631. (4) The plaintiffs had the right in making these deeds to assume that the city would pay them for this property what the land commissioners' jury would declare it to be worth. That was the promise of the then existing city charter (August, 1864). Secs. 5 to 12 Act of January 16, 1860, Supplementary to Charter of City, Sess. Acts 1859–60, pp. 383, 384; *Leslie v. St. Louis*, 47 Mo. 474; *Anderson v. St. Louis*, 47 Mo. 479; *Leisse v. Railraod*, 2 Mo. App. 105; s. c., 72 Mo. 561. Since the adoption of the constitution of 1875 defendants have had no right to disturb this land until the compensation for it is actually paid. Sec. 21, art. 2, constitution of Mo. 1875. (5) The trial court also erred in excluding the evidence that plaintiffs always paid general and city taxes levied upon this identical property. This evidence showed an intention not to dedicate and also rebutted the claim of acceptance by the public. Elliott on Roads and Streets, p. 131.

*W. C. Marshall* and *John G. Chandler* for respondents.

(1) The plat acknowledged and recorded by plaintiffs October 18, 1867, was a complete statutory dedication of the land in controversy, and vested the title in the city of St. Louis for the use of the public. No acceptance was necessary. *City of California v. Howard*, 78 Mo. 88; *Hanson v. Eastman*, 21 Minn. 509; *Sanborn v. Chicago, etc. Co.*, 16 Wis. 19; *Yates v. Judd*, 18 Wis. 118; *Reid v. Board*, 93 Mo. 295; *Indianapolis v. Kingsbury*, 101 Ind. 463; *Fulton v. Dover*, 6 Atl. Rep. (Del.) 633; *Chapin v. Brown*, 10 Atl. Rep. (R. I.) 639; *Denver v. Clements*, 3 Col. 484; *Barraclough v. Johnson*, 8 Ad. & E. 91; *Elizabethtown, etc., Co. v. Combs*, 10 Bush. (Ky.) 382; *Noyes v. Ward*, 19 Conn. 250; *McDonald v. Wolff*, 40 Mo. App. 303, 309; *Gammon v.*

*Freeman*, 31 Me. 243; Elliott on Roads and Streets, p. 111. (2) If the plat did not operate in and of itself as a statutory dedication of the wharf east of block 1, then the deeds made by plaintiffs in October, 1867 and 1868, operated as a common law dedication of the wharf 400 feet wide, which plaintiff afterwards could neither revoke nor impair. *Heitz v. St. Louis*, 110 Mo. 618; *Archer v. Salinas City*, 93 Cal. 43; *Schmitt v. San Francisco*, 34 Pac. Rep. 961; *Hannibal v. Draper*, 15 Mo. 634; *Ragan v. McCoy*, 29 Mo. 366; *Gamble v. City*, 12 Mo. 617; *Rutherford v. Taylor*, 38 Mo. 315; *Hincklin v. McClear*, 22 Pac. Rep. 1057; *Gormley v. Clark*, 134 U. S. 338; *Scherer v. Jasper*, 9 S. Rep. (Ala.) 584; 2 Dillon on Mun. Corp., secs., 503, 640, n. 5; *Harrison Co. v. Sial*, 5 S. Rep. (Miss.) 622; *Grogen v. Hayward*, 4 Fed. Rep. (Cal.) 161; *Moore v. Little Rock*, 42 Ark. 66; *In re Wayne Av.*, 16 Atl. Rep. 631 and note; *Eureka v. Grogen*, 19 Pac. Rep (Cal.) 485, and note; *San Leandro v. Le Breton*, 13 Pac. Rep. (Cal.) 405; Elliott on Roads and Streets, 115, 116; *Rose v. St. Charles*, 49 Mo. 509; *Taylor v. City*, 14 Mo. 20; *Baker v. Vanderberg*, 99 Mo. 378; *State v. Trask*, 27 Am. Dec. (Vt.) 554, Freeman's note, 568. (3) Evidence of payment of taxes by plaintiff was inadmissible to defeat their dedication, however made. *St. Louis v. Gorman*, 29 Mo. 593; *Hannibal v. Draper*, 36 Mo. 332; *San Leandro v. Le Breton*, 13 Pac. Rep. (Cal.) 405, 408; Bigelow on Estoppel, 578; Elliott on Roads and Streets, 131.

GANTT, P. J.—This is an action of ejectment by Charles L. and Louis W. Buschmann against the city of St. Louis and the St. Louis, Keokuk & Northwestern Railroad Company, to recover possession of a tract of land of one and eighty-three hundredths acres, lying between the east line of city block 2506 and the Mississippi river as indicated by the accompanying plat:

The defense was a dedication to the public use by the plaintiffs. The cause was tried before Judge Valliant, without a jury. It was admitted that Louis Bissell was the common source of title.

On the tenth of August, 1867, Bissell and wife, by deed duly acknowledged and recorded, conveyed to plaintiffs sixteen and seventy-six hundredths acres, bounded north by Ferry street, east by the Mississippi river, south by property of Chouteau, Harrison and Valle, and west by the center line of Gingrass creek. It was then shown by Bleeck, a surveyor who surveyed the lot sued for a short time prior to the commencement of this suit, in August, 1890, that the land in dispute is a part of the tract plaintiff bought of Bissell. In October, 1867, they caused this tract of land to be surveyed and subdivided by W. H. Cousins, surveyor and civil engineer. On the eighteenth day of October, 1867, they acknowledged this plat and put it upon record. The plat embraces all the lands bought by them of Bissell. Their acknowledgment states: "The above plat represents Buschmann's addition to the city of St. Louis, as laid out and subdivided by the undersigned legal owners, and the streets, and alleys as therein represented are hereby dedicated to public use forever."

This plat contains six blocks laid off in lots; it has seven streets, and the disputed space between block 1 and the river, an east and west alley subdividing lots 2, 3 and 4 throughout, and the west half of block 1, and a north and south alley intersecting block 1. Of all these streets, but three have any names upon them, or any words designating that they are streets; and of these, one, Ferry street, existed before the plat was made, and constituted the north boundary of the property by Bissell's deed. Augusta street (now Penrose), on the south line of the property, and Buschmann street,

between blocks 1 and 2, bear names. The other streets, namely, between blocks 2 and 3, 3 and 4, 4 and 5, and 5 and 6 are not otherwise designated on the plat than by blank, uncolored strips, in this agreeing exactly with the space between block 1 and the river. The distance on Ferry street from the east line of block 1, to the east line established by Bissell, is given as three hundred and fifty-five feet, five and one-fourth inches, as are the widths of the various streets between blocks as sixty feet. The city reservoir property north of Ferry street is also designated on the plat. The east line of block 1 of this subdivision (now city block 2506), is identical with the west wharf line as established by city ordinance 5403, passed in 1864. Ordinance 5403, established the wharf as a public highway for wharf purposes from the south side of Biddle street to the northern boundary of the city, defining the western boundary line of the wharf in its entire length, which line "passes a point in the center of Ferry street, which point is distant two thousand, five hundred feet eastwardly from First (Main) street measured along the center line of said Ferry street." It also defines the eastern boundary of the wharf as "distant eastwardly from said western boundary line three hundred feet."

The city by ordinance number 1805, approved February 6, 1847, had ordained that "Front street, as at present defined by ordinance, shall be and the same is hereby declared to be, part and portion of the wharf." With the west boundary line of this wharf so established, plaintiffs made the east boundary of their block number 1 to conform, and left the space vacant between that and the river unnamed, as they did the vacant space between blocks, except only Buschmann street.

On the first day of October, 1867, evidently after this plat was made and in contemplation of its being acknowledged and recorded, plaintiffs, with their wives,

executed a deed to John G. Redmeier, for lot 1 in block 1 of their addition in consideration of $1,209.57. The description is as follows: "Lot number 1, in block number 1 of Buschmann's addition to the city of St. Louis, a plat of which is recorded in the recorder's office of St. Louis county, said lot having a front of thirty-three feet, seven inches on the west line of the wharf four hundred feet wide, by a depth westwardly of one hundred and fifty-four feet, four inches to an alley twenty feet wide; is bounded on the north by Ferry street, east by said wharf, south by lot number 2 in said block number 1, and west by said alley."

On the same October 1, 1867, plaintiffs conveyed to Davis Shaw other lots in the same block in consideration of $830.43. The description is as follows: "Lots numbers 3 and 4 in block number 1, of Buschmann's addition to the city of St. Louis, a plat of which is recorded in the recorder's office of St. Louis county, said lots having an aggregate front of fifty-one feet, six inches on the west line of the wharf four hundred feet wide, by a depth westwardly, number 3, one hundred and forty feet, seven inches and number 4, one hundred and thirty-five feet, ten inches to an alley twenty feet wide; said lots are bounded on the north by lot number 2, in said block number 1, and east by said wharf, south by lot number 5, in said block number 1, and west by said alley." Both of these deeds were acknowledged October 14, 1867, just four days before the plat was acknowledged and recorded.

Appellants, on January 29, 1868, conveyed other lots in the same block to Casper Wiegand in consideration of $1,608.33, the deed describing them as follows: "Lots numbers 10 and 11 of block number 1 of Buschmann's addition to the city of St. Louis, a plat of which is recorded in the recorder's office of St. Louis

county, said lots having aggregate front of sixty-four feet, four inches on the west line of the wharf by a depth westwardly of one hundred and twenty feet, one inch on the southern line of lot number 11, and one hundred and thirty-two feet, one-half inch on the northern line of lot number 10, to alley twenty feet wide, having an aggregate front of sixty-two feet, eight and one-half inches on the eastern line of the alley, and bounded on the north by lot number 9 in said block number 1, south by Augusta street, east by wharf, and west by said alley.'' This deed was acknowledged February 21, 1868, recorded May 2, 1868.

Immediately after the execution of these conveyances the grantees built on their respective lots, in each instance placing the front of their building on the east line of the block, or the west wharf line, and said buildings have ever since remained there, except that one of them was burned and subsequently rebuilt, and they yet remain, as does also a building put up by plaintiffs themselves immediately after the making of their plat, but there was always space for driving and passage between the lumber and wood, and the space of seventy feet immediately in front of the block was always free and unobstructed. Some fifteen years ago plaintiffs sold to Smith and Gartside a piece adjoining Ferry street one hundred and ten feet wide and three hundred feet deep towards the river, lying seventy feet east of the west wharf line. On this piece an ice house was built. By a series of conveyances this passed to the St. Louis Merchants' Bridge about two years before the trial, to which company also plaintiff made a quit-claim deed about the same time for the seventy feet between lots 1 and 2, of block 1, and this ice house piece.

The city by ordinance number 8003, approved June 25, 1872, established the grade of the wharf in

the northern part of the city, fixing the grade at "Augusta street twelve feet, thence to the northern city limits at the waterworks thirteen feet vertical to one hundred feet horizontal."

The city by ordinance 14,797, approved February 14, 1887, granted to the Merchants' Bridge Terminal Railway Company the right to construct, maintain and operate a railroad for the purpose of connecting its tracks with the bridge to be erected by the St. Louis Merchants' Bridge Company across the Mississippi river at Ferry street, the railroad to run through the waterworks reservation to Ferry street, thence along Ferry street and across the wharf to the Mississippi river.

The city, by ordinance number 15,377, granted to the St. Louis, Keokuk & Northwestern Railroad Company the right to construct, maintain and operate its road from the northern limits of the city over various streets and public grounds to and through the grounds of the city waterworks "to the wharf as established by ordinance number 5403, thence along the wharf so established and the streets and alleys intersecting the same to Branch street," which is some distance south of Penrose street.

The land sued for was always known as wharf from 1867 and was continuous with the city wharf for a long distance south on the river front. It was never inclosed by a fence. Some time before this suit was brought, the respondent railroad company located its line over this property, and drove several stakes. Up to that time plaintiff had never interposed any objection to the use of the wharf by the public, but finding that the company was about to build a railroad there, they ran a fence from the southeast corner of block one (city block 2506), to the river. The same day, or the next day, the city sent the harbor boat and

pulled it down, and it was never afterwards rebuilt. At the time the suit was brought, no railroad had been constructed on the premises. The tracks were laid, or begun to be laid, in August, 1891. The suit was brought in August, 1890. The railroad company claimed no title to the property, nor any right to lay its tracks there, except pursuant to the grant of the city ordinance number 15,377.

The space actually occupied by the railroad was a strip twenty-five feet wide from Penrose street to Ferry street, having its center line at Penrose street, and for about two-thirds of the block northwest, thirty-six feet east of, and parallel with, the west wharf line, but thence northward curving slightly to the westward, so that at Ferry street the west line of the strip was between fifteen and twenty feet from the west wharf line. Some evidence was introduced by appellants as to the rental value of the whole one and eighty-three hundreths acres, and also of the part occupied by the railroad tracks; but as the judgment was for the defendant, it is unnecessary for the purposes of the present appeal to set it out. Appellants offered evidence of the payment by them of taxes on the property sued for, but on defendant's objection that it was incompetent, irrelevant and immaterial, the court ruled it out, and of this they complain.

The court, in a declaration of law of its own, declared, in effect, that the plaintiffs by their plat of October 18, 1867, had dedicated the land in controversy to the public, and that they could not recover, and gave judgment accordingly.

The court at the instance of the appellants, gave an instruction as to the effect of the deeds made by appellants in October, 1867, and January, 1868, substantially that these deeds were immaterial. As the judgment, however, was for the defendants, they are

not prejudiced by this ruling, although for reasons
set forth in their brief, they claim it was erroneous and
prejudicial, if the court had not held the plat to be a
statutory dedication.

The court refused two instructions asked by plain-
tiffs as follows:

"1. That by plaintiffs' plat of October 18, 1867,
read in evidence by defendants the plaintiffs laid out and
subdivided only so much of their land as lies west of
the land here sued for and west of that heretofore sold
by them to the Merchants' Terminal Bridge Rail-
way Company. That the subdivision contemplated by
said plat does not include any of the land lying east of
the most eastern block of said addition now called
city block 2506. And that by said plat plaintiffs ded-
icated to public use only the streets and alleys appear-
ing on said plat, and did not dedicate to public use the
vacant and unnamed parcel of ground of which the
ground now claimed by plaintiffs in this suit is part.

"5. Upon all the evidence, the court, sitting as a
jury, must find that plaintiffs have not lost title to the
ground here sued for, by dedication."

I. The construction to be given the plat executed,
acknowledged and filed by plaintiffs for record October
18, 1867, must determine this appeal. The trial court
held it a valid statutory dedication of the land in con-
troversy for a public wharf or highway. Plaintiffs
insist that the land sued for was not included in the
subdivision made by the plat, but if considered a part
of the plat, that it was not dedicated to public use
because only the streets and alleys were named in the
marginal note of dedication, and because this parcel is
unnamed for any purpose, and was left for the owners.

Chapter 44 of the General Statutes of Missouri,
1865, page 247, was in force when this plat was exe-
cuted and recorded. By the first section of this chap-

ter, whenever an addition to any city should be laid out, the proprietor was required to make out an accurate map or plat thereof, particularly setting forth and describing all the parcels of ground within such addition reserved for public purposes by their boundaries, course and extent, whether intended for avenues, streets, lanes, alleys, commons or other public uses; " and, *second*, all lots for sale by numbers, and their precise length and width," and should acknowledge it as a conveyance of real estate and record it.

By the eighth section, *such plat* so made, acknowledged, certified and deposited with the recorder *was a sufficient conveyance* to vest the fee of such parcels of land as are therein named, expressed or intended for public uses in such city, town or village. And the ninth section imposes a penalty for filing a map or plat which does not describe the parcels of ground set apart for public use.

The plat filed by plaintiffs of their addition to the city complies with the section in every particular, save that it does not designate all the streets and alleys as "streets and alleys," or by names, but indicates in an unmistakable manner, by the space left therefor between the blocks with their exact width and conformation to the other streets of the city, that they were dedicated for that purpose, as effectually as if "street" or "alley" was written on each of such parcels designed for such use. Ferry street, which is noted on the plat by name, existed before the addition was laid off, constitutes the northern boundary. Augusta street (now Penrose) is laid off on the plat, and is the southern boundary, and Buschmann street lies between blocks 1 and 2. There are three other streets sixty feet wide running north and south through the addition which have no names, and yet we suppose no one would have the hardihood to say they were not plainly dedi-

cated for public streets, but when we come to consider the strip in dispute, it is contended it is not dedicated to public use because the word "street" or "wharf" is not written on it.    But it is not necessary.

Applying the process of exclusion first, it is clear it was not laid off into lots for sale, because it is not numbered as blocks or lots nor is it subdivided into lots "giving their precise length and width." Laying this map or plat of this addition on a map of the city we find that the western line of the strip in dispute conforms exactly to the western wharf line, coming from the south, and is prolonged in the same direction, of the same width, and at the same distance from the river, as the wharf line had been established by ordinance number 5403, passed in 1864. But, again, the plat shows that the east half of block 1 of Buschmann's addition, now city block 2506, contains eleven lots, all facing on the wharf, if the contention of the city be correct, but facing on private property, with no public front, and with no means of access, by street or alley, if plaintiffs are correct in their claim that they did not dedicate it to the city.

We think it entirely unreasonable to construe this plat as plaintiffs ask. Moreover, we think, the concession of the learned counsel itself refutes the idea that this was to be kept for private purposes. They say that the city ought not to be heard to complain of their leaving this tract to conform in every way to the wharf because the city had indicated by its ordinance that it would some day condemn it for a wharf. It seems to us that this confirms what we have said, namely, that plaintiffs themselves intended this to be used for a wharf and so left it on the plat. "When the owner of property which is within the limits of an incorporated city or town makes and records a map of such property, by which he subdivides the same into blocks and lots

bounded by streets *which are continuations of other streets already laid out* by the city or town, and sells and conveys the lots abutting upon those streets, he thereby dedicates to the public the streets so laid out by him as prolongations of other streets, as well as the other streets which are laid out upon such map intersecting and connecting the same. * * * Upon this point the authorities are uniform." *Archer v. Salinas City*, 93 Cal. 43; s. c., 28 Pac. Rep. 839.

Having designated the parcel in dispute as a prolongation of the wharf, by its exact lines and angles, and recorded it, we think plaintiffs made a statutory dedication of it to public use and having once so dedicated it, in the manner prescribed by law, it needed no acceptance by the city, and was irrevocable. *Reid v. Board of Education*, 73 Mo. 295; *City of California v. Howard*, 78 Mo. 88; *Hanson v. Eastman*, 21 Minn. 509; *Yates v. Judd*, 18 Wis. 118; *Indianapolis v. Kingsbury*, 101 Ind. 200; *Archer v. Salinas City*, 93 Cal. 43; s. c., 28 Pac. Rep. 839.

II. The learned circuit judge who tried the cause, in his declaration of law, attached no importance to the three deeds made by the plaintiffs contemporaneous with the platting of this addition. By each of those deeds they sold lots in block 1 of their addition, and describing said lots as *fronting on the west line of the wharf*, four hundred wide.

If the dedication had not already been complete, the execution by the grantors and acceptance by the grantees of these deeds, with the recitals on their face that the lots fronted on a wharf four hundred feet wide, was a valid common law dedication. *Heitz v. St. Louis*, 110 Mo. 618; *MacDonald v. Wolff*, 40 Mo. App. 303; *Archer v. Salinas City*, 93 Cal. 43; *Bartlett v. Bangor*, 67 Mo. 460; *Town of Derby v. Alling*, 40 Conn. 410; *Carter v. City of Portland*, 4 Oregon, 339.

No ordinance was necessary to indicate the acceptance by the city. From the evidence, however, it appears that it was continuously thereafter used as a wharf and street by the public. The city fixed the grades on it by ordinance 8003, and by its ordinance 5403, fixing this line for the wharf, in advance, it indicated its acceptance from the moment it was thrown open to travel and the plat recorded.

III. While the payment of taxes is competent evidence tending to defect the presumption of dedication, still the mere payment of taxes will not rebut the clear intent to dedicate. *City of St. Louis v. Gorman,* 29 Mo. 593; *City of Hannibal v. Draper,* 36 Mo. 332; *Town of San Leandro v. Le Breton,* 13 Pac. Rep. 405–408; Elliott on Roads and Streets, 131.

Our conclusion is that the plaintiffs made a valid statutory dedication of the tract sued for and that they can not recover. The claim that they have never been compensated for the land would be very persuasive, had their conduct not so clearly indicated that they were voluntarily granting the wharf to the city, for a public use, and obviating the necessity of condemnation and compensation. The judgment is affirmed. All of this division concur.