PEARL E. EVANS, APPELLANT, v. J. TILDEN ANDRES AND GUSSIE ANDRES, RESPONDENTS.—42 S. W. (2d) 32.

In the Springfield Court of Appeals. September 1, 1931.

*Watson & Allison* and *Williams, Henson & Stone* for appellants.

*W. D. Jones* and *Lorts & Breuer* for respondents.

BAILEY, J.—Plaintiff filed her bill in equity to enjoin defendants from closing certain streets in the town of Jerome, Missouri, an unincorporated subdivision of Phelps county. The petition alleged that on April 1, 1867, William F. Greeley, being the owner of certain lands in Phelps county (in the petition described), made a plat subdividing and laying out the same into town lots, blocks, etc., and

particularly describing the boundaries of streets and alleys reserved for public purposes and referring to the lots and blocks by numbers, all of which was duly executed and placed of record in the office of the Recorder of Deeds of Phelps county; that Elm Street and Third Street are two of the streets laid off and described in said plat; that said platted land was never incorporated as a town, city or village but has remained outside the limits of any municipal corporation; that by reason thereof the title to all said streets and alleys was vested irrevocably in the county of Phelps, for the purposes shown by said plat, as provided by section 9287, Revised Statutes 1919. It is further alleged that, after the filing of said plat, William F. Greeley offered for sale all the lots. by number and that all the land contained in said plat has been continuously sold and offered for sale as described in said plat since the recording thereof; that all the streets and alleys, therein shown, have been, and are still, recognized as such in all such conveyances.

It is further alleged that, by mesne conveyances, plaintiff has acquired title to certain lots in block 39 and defendant has acquired title to certain other lots in said block; that plaintiff has been the owner and in possession of said lots since 1912, and during that time has established a large and lucrative business as the proprietor of a tourist camp and resort; that in the establishment of said business she has expended large sums of money and much labor; that said lots owned by her are bounded on the south by Elm Street, and on the east by Third Street, which streets constitute the only means of egress and ingress of the plaintiff to and from her property and business; that if said streets are fenced or closed it would result in the total destruction of her business and result in irreparable injury, which would not be susceptible of estimating.

It is further alleged that defendants are now threatening to erect and build across said streets, along the property of plaintiff, so as to completely shut off any means of ingress and egress by plaintiff or other persons to and from her said property and in furtherance of said design have caused said streets to be surveyed; that if said streets are closed, plaintiff will suffer damages over and above that suffered by the general public and that she has no adequate remedy at law.

The petition then prays that defendants be perpetually enjoined from erecting any fence, fences or other obstructions along or across Elm or Third Streets.

A demurrer to the petition was filed and overruled. Defendant thereupon filed their answer setting up four defenses, which may be stated as follows: (1) That the county court of Phelps county by its order and judgment duly and legally made in the November term, 1877, vacated the streets and renounced whatever title the county

may have acquired. (2) That said alleged streets were never in fact streets or public highways and by nonuser for ten years, were deemed abandoned. (3) That said lands described as streets, have been in the adverse possession of defendants for more than twenty years and said streets have been obstructed by fences and buildings of both plaintiff and defendants. (4) That plaintiff has an adequate remedy at law. The reply consisted of a general denial, and a special denial that the county court of Phelps county ever legally vacated the street and that the title to said streets being vested in the county, the Statute of Limitations would not run.

The cause was tried before the court without a jury at the September term, 1930, and resulted in a decree finding all the issues in favor of defendants and plaintiff has appealed.

We shall first consider the effect of the order made by the county court of Phelps county in 1877. The vacation order alone, of the county court record relative to the closing of the streets in question, was introduced in evidence, and it was as follows: "Now comes John O'Day, attorney of the St. Louis & San Francisco Railway Company and presents a petition praying the court to vacate the following lots, streets, alleys, commons and public squares in the town of Jerome, Phelps county, Missouri, to-wit:

" 'All of blocks one to twenty-two (1 to 22) inclusive, twenty-seven (27) to thirty-five (35) inclusive, thirty-seven (37) to forty-eight (48) inclusive, and also lots four (4) to twelve (12) inclusive, in block thirty-six (36).' And having filed proof of notice of publication of this application as required by law and no person interested having appeared and shown cause why said vacation should not be made, it is therefore by the court ordered that the said lots, streets, alleys, commons, public squares above described and marked on the recorded plat of the town of Jerome, and that said grounds shall hereafter be described by metes and bounds, section lines, etc. And it is further ordered that the clerk certify this order to the recorder of Phelps county."

Under the laws of 1865, p. 202 (now sec. 7169, R. S. 1929), applicable to subdivisions outside the limits of any town, in force at the time the county court's order in question was made, the county court of Phelps county was vested with power to vacate "the streets, avenues or roads or a part of either, upon petition of the owner or owners of the ground lying on both sides of or fronting on the street, avenue or road, or part thereof to be vacated." This statute further required publication or posting of written or printed notices fifteen days prior to the term of the court at which such petition should be presented. It provided also that such notice should "state distinctly" what street, avenue or road, or part thereof is proposed to be vacated. Obviously the order of the county court

fails to show on its face a compliance with the statute above referred to in several important particulars. The order purports to be based upon the petition of John O'Day, Attorney for the St. Louis & San Francisco Railway Company. There is nothing shown which indicates what interest, if any, John O'Day or the said railroad company had in the platted subdivision. If either owned all or any portion of the plat, either the order or petition should have so stated, since the statute required that the petition be filed by the owner or owners of the ground lying on both sides of, or fronting on, the street to be vacated. The description of the roads or streets to be vacated is vague and indefinite, while, the statute required the street or road to be distinctly described. In fact there is no road or street named, although all the streets bore names according to the recorded plat. The order simply described part of the subdivision, but the streets intended to be vacated are left to conjecture. The order recited that proof of notice of publication "as required by law," was filed, but the notice is not shown nor is there any proof that it was published as and for the length of time the law required.

We consider these matters jurisdictional. The county court had no power to vacate the streets and alleys, if indeed the order could be construed as sufficiently clear to vacate anything, unless and when a proper petition was presented and legal notice given. These provisions were jurisdictional and should have appeared on the face of the record. No intendments in favor of the jurisdiction of an inferior court, with its powers prescribed and limited by statute, may be indulged. [Spurgeon v. Hennessey, 32 Mo. App. 87; Robinson v. Korns, 250 Mo. 670, 157 S. W. 790; Drainage District v. Bates County, 216 S. W. 949, l. c. 951; Zeibold v. Foster, 118 Mo. 349, 24 S. W. 155.]

The latter case was one involving a change in the location of a road. The Supreme Court, at page 354, uses this language: "The county court has jurisdiction to establish new public roads and make changes in those already established on presentation of the petition required by the statute, provided that the requisite notice has been given. Until these steps are taken, the court has no jurisdiction of the subject matter, and all subsequent proceedings will be void. After the jurisdictional steps have been taken the court may proceed in the exercise of its jurisdiction in the manner pointed out by the statute.

" 'It is well fixed in the jurisprudence of this State that all facts conferring jurisdiction on county courts to establish, open and change public roads must affirmatively appear on the face of the proceedings.' "

In Sutton v. Cole, 155 Mo. l. c. 213, it is held that:

"It has long been settled law in Missouri that the jurisdiction of courts of inferior jurisdiction, and of courts that do not proceed

according to the course of the common law, must affirmatively appear on the face of the proceedings. [Citing cases.]

The county court is not only a court of inferior jurisdiction, nor was it proceeding according to the course of the common law in the sale of these school lands, but it was acting under special statutory directions, which must have been observed before it could acquire jurisdiction of the subject matter."

Many other Missouri cases might be cited supporting the proposition that, where jurisdiction of the county court is not shown on the face of its record, it may not exercise statutory authority. It is our opinion the order of the county court purporting to vacate the undescribed streets and alleys in the Town of Jerome, was null and void.

We shall now refer to the second defense pleaded, that of non-user. At the time the plat of the so-called "Town of Jerome" was filed in the office of the recorder of deeds of Phelps county, on April 4, 1867, the laws of this State relating to unincorporated towns and villages, contained the following provision, to-wit: " Such maps and plats of such cities, towns, villages and additions, made, acknowledged, certified and deposited with the recorder, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein named, described, or intended for public use in such city, town or village, when incorporated, in trust, and *for the uses therein named, expressed, or intended, and for no other use and purpose. If such city, town, or village shall not be incorporated, then the fee of such lands conveyed as aforesaid shall be vested in the proper county in like trust and for the uses and purposes aforesaid and none other.*" (Italics ours.)

Section 8, page 248, General Statutes 1865. This section now appears as section 11,185, Revised Statutes 1929.

Much of plaintiff's brief dwells upon a construction of this statute relative to the kind, character and degree of title the county of Phelps acquired in and to the dedicated streets and alleys shown on the recorded plat. Appellant contends the filing and recording of the plat in 1867 by Wm. F. Greeley, "vested the fee-simple title thereto in the county of Phelps without assent thereto, or acceptance thereof by the public or said county." It will be conceded and our courts have so held, that the filing of the plat vested the county of Phelps with such title as the statute (supra) provided and the consent of the county was not required. [Brown v. City of Carthage, 128 Mo. 10, 30 S. W. 313; Buschmann v. St. Louis, 121 Mo. 523, 26 S. W. 687; Laddonia v. Day, 265 Mo. 383, 178 S. W. 741.]

But appellant's contention that the county of Phelps became thereby vested with the absolute fee-simple title to the land contained within the boundaries of the streets and alleys, as shown by the recorded plat, cannot be upheld. That question has been definitely

and, we presume, forever settled by our Supreme Court in the case of Neil v. Realty Co., 317 Mo. 1235, 298 S. W. 363. The identical point is there thoroughly discussed and most of the Missouri cases pertinent thereto reviewed and the question laid to rest in language as follows:

"But, it appears that these few cases, as we have pointed out above, unfortunately say that these statutory plats, in statutory dedications, vest a fee. That they are wrong is clear from the reading of the statutes from 1835 on up, and from the other cases we cite and quote from in this paragraph. Our statutory plats do not vest a fee-simple interest in the city or county. These streets, alleys, and other public grounds are held for the use of the public, and not otherwise. Such plats, in fact, create but an easement, and when vacated the city has no title nor interest, but the land, divested of the easement, reverts to the original owner or his grantees. The easement, or user, may be a little broader and deeper and more firmly fixed by the statute, than it was by the common law (we think not), but it is an easement nevertheless. The statutory method really only avoids acceptance by the city and proof thereof. But even if we called it a conveyance in trust, the result is the same. When the uses for which the trust is created cease, there is a reverter, as in case of an easement. From the weight of authority we think our statute creates merely an easement, as by a common dedication." [298 S. W. l. c. 370- 371.]

That decision was by the court in banc and has been referred to with approval by the Supreme Court in the later case of Kansas City v. Jones Store Company, 28 S. W. (2d) 1008, l. c. 1015.

It follows that plaintiff's conclusions bottomed upon the premises that Phelps county acquired the fee-simple title to Elm and Third streets in the Town of Jerome at the time the plat was recorded, cannot be upheld. The title of the county under section 11,185 (supra) was not an absolute fee, but merely an easement for a special purpose, as by a common-law dedication, which easement, we think, might be lost by non-user for such period of time as in legal contemplation would be construed as an abandonment, in which case the title would revert to the then owners of the abutting property. While this is true, the burden of proving loss of an easement by non-user is upon defendant.

In this connection it is necessary to determine for what period of time non-user must be shown in order to be deemed in itself an abandonment or vacation of a street in an unincorporated town such as Jerome. Under the general road law, relative to Roads · and Bridges, it is provided that: "All roads in this State that have been established by any order of the county court, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and all roads that have been used

as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuser by the public for ten years continuously of any public road shall be deemed an abandonment and vacation of the same." [Sec. 7839, R. S. 1929.]

Defendant contends this section governs the case at bar. We do not think so. There is nothing in the language of that statute to indicate it was intended to apply to any roads other than those defined in the statute as "legally established public roads." Such roads as defined in said statute are those established by an order of the county court, or by user for ten years as such and upon which public money has been expended. No other class of roads seems to have been included. The statute does not contemplate streets in cities, whether incorporated or not. As to incorporated city streets our Supreme Court has so ruled. [Clay Products Co. v. St. Louis, 246 Mo. 446, l. c. 460, 151 S. W. 460.] The streets in platted towns become public highways by dedication with the recording of the plat. No order of the county court accepting such dedication is required.

There can be no doubt the Legislature has provided laws for streets and alleys separate and distinct from the general road laws. For example, when legally established roads under the general law have once been established the statute provides a method under the general law for vacation of the same by court proceedings. [Sec. 7836, R. S. 1929.] But an entirely different section of the law governs the vacation of streets in platted unincorporated towns. [See sec. 7169, supra.] It thus seems clear a separate code has been provided for the vacation of the two classes of highways and we perceive no sound reason for enlarging upon the provisions of section 7839 (supra), so as to permit it to encompass streets and alleys in unincorporated cities. We therefore hold said ten-year statute has no application in this case, although certain broad langauge used in the case of Johnson v. Rasmus, 237 Mo. 587, relied on by defendant, might be so construed. It is our opinion, as heretofore indicated, that the streets of Jerome in question might become vacated and abandoned by non-user. Where non-user alone is relied upon to establish an abandonment of a dedicated street in an unincorporated town, we think such non-user for a period of twenty years or more (applicable to incorporeal rights) must be shown, as was true of county roads prior to the enactment of section 7839 (supra). [State v. Culver, 65 Mo. 607; State v. Young, 27 Mo. 259.] The authority of those cases has never been questioned and we hold the rule there announced should apply in this case.

Looking to the evidence, plaintiff introduced the plat of the town of Jerome as recorded April 4, 1867, which as offered in evidence,

also shows the lots owned by plaintiff, defendant, and their brother Russell Andres, all abutting on Elm street and Third street. The plat is as follows: |PLAT| The proposed fence, the building of which plaintiff seeks to enjoin, is shown by a line running down the center of Elm street from Fourth to Third thence north down the center of Third street to the south side of the alley in Block 38; thence east across second street and through Block 37 to Main street; thence south across Elm street, thus enclosing defendant's property and obstructing parts of Elm street and Third street abutting plaintiff's property. Plaintiff's evidence shows she purchased lots 29 to 32, inclusive, in Block 39, abutting on Elm street, February 14, 1914, from Grover C. Stewart and wife; that she became the owner of lots 17 to 21, inclusive in Block 39, November 6, 1919; that these ten lots are affected by the fencing; that she conducts a summer resort at Jerome and her principal place of business is located right on the corner of Elm street and Third street, where defendant wants to run his fence; that Elm street runs east and west, between her property and defendant's main lodge. She testified that, "That street would run through the entire length of the town of Jerome if it was open, but is was not open any further than just up to my place. It commences on the east at the county road that runs north and south along the Gasconade river. Elm street connects with the county road, and we can go from the county road on down to the river. That has been the usual traveled way from the river to my place, and that portion of Elm street from its intersection with the county road to my place has been generally traveled by the public since 1914.

"Third street runs north and south, right in front of my main lodge and houses, which front on the east. In coming up from the river on Elm street, we also use Third street in reaching our premises. Third street has always been open since I have lived there, and its use has never been denied to anyone else, as far as I know."

On cross-examination she further testified as follows:

"Elm street, which runs through the property of my brother, the defendant, has been used by the public as a public highway, to drive into my place and into his place. I am running a summer resort. I have my sign on one side, and he has his on the other. When people come to my resort or his, they drive in there and select either place, so long as the street is open. When he puts the fence up, they must select the one they can get to.

"They come right off the county road into Elm street, the one I am interested in. They come in the county road unless they come on private land.

"As to whether there is and has been for many years, a fence across Elm street down next to the county road, and a gate there, it has not been there many years, and the gate hangs open. If

they had ever attempted to shut me out, there would have been a suit long ago. There is a gate there, but they never shut it. Mr. Andres never denied me the privilege of going through that gate or through his premises, because he didn't consider he had any right to do so."

Plaintiff further testified defendant told her he intended to build the fence as heretofore indicated and as to that there seems to be no denial. It was also shown on behalf of plaintiff that while Elm street had never been improved, and was rough; trees growing in it and boulders impeding the way, nevertheless it could be and was traveled by the public from the time plaintiff purchased her property until the present time.

Russell Andres, a brother of plaintiff, owning lots in Block 40, west of plaintiff's property, and abutting on Elm street, testified as follows: "My hotel fronts on Elm street, west of the plaintiff's property, west of the property of the defendants, and over behind them. I know from an examination of the plat where Elm street is located. It runs east and west, in a westerly direction from the public highway down near the river to the west line of the town of Jerome. I have property on both sides of it.

"I have been forced to use an alley in getting to my property from the public highway. When we go to the river, we go down the county road. Elm street has been used in a way, to walk through from my place toward the river. I know where Third street is. From Third street down to the county road, Elm street has been used as a road.

"During the time I have been there, we have all walked and driven through until lately, and anyone that wished to use it in coming from the county highway has done so. The reason it has not been so used recently is that Til Andres closed it up." He further testified that from Third street east to the county road, Elm street was a graveled highway, the gravel being put there by defendant.

Defendant had the burden of proving the streets abandoned by non-user. In his behalf B. H. Rucker testified that he had known the ground around Jerome since 1890 and formerly owned all of the plat; that since 1890, neither Elm street nor Third street have ever been opened up and travelled and used as a public throughfare: that the ground is rough and there isn't any well defined place of travel. On cross-examination he said that portion of Elm street from Third street to the county road had been generally used by all the resort keepers and he never knew of anyone being prohibited from using any portion of it at any time they desired to do so.

Alza Loughridge, whom we consider the strongest witness for defendant, testified he had lived in and around Jerome since 1877; that, "I have heard of supposed streets by the name of Elm street and Third street, but I could not tell exactly where they were.

During the fifty years I lived there, they were not used as streets and public highways by the public. Elm street has never been so used during the last half century. Third street was not used, except where a road ran down Third street from the alley to Mr. Andres' property for a short distance. It has been something like thirty years since that was used. During the fifty years' time, I never knew the county or anyone to work or expend money or labor on it. It never was open."

But on cross-examination he testified Third street had been opened and used for more than thirty years and is still being used.

Defendant himself testified that he had lived in Jerome about twenty-eight years; that, "Elm street was open for about one year after I went there. Mr. Huber owned the property on both sides of Elm street at that time. He then fenced up both ends of Elm street from Third street to the public highway, and he had a garden in one end. It might be called a cornfield. There was a garage in the front, and a corner of a log cabin in the street. I have erected two garages on the west of Third street. He (Huber) put a barn on the west side of Third street at its intersection with Elm street, which was partly in Elm street and partly in Third street.

"Elm street, west from Third street, toward Rus Andres' or between Third and Fourth streets, has never been opened to the public. Most of the land next to my place has no trees in the way, but on the rest of the ground, the trees are so thick you can hardly walk through, and up next to Rus, Elm street is so rough that you can't go through in the night without a light. That part of Elm street has never been used by the public as a highway. North from my property toward the highway has never been used as a public highway.

"The plaintiff in this case has a chicken house and a fence around the back end of it in Elm street west of Third street, and she has four cottages that are in the alley north of Elm street."

As to Third street defendant further testified that: "I know where Third street is, and have known for years where it was located on the plat. It runs north and south, and intersects with, or crosses Elm street north of my main building where I live. Third street runs on the east side of Mrs. Evans' property, right in front. We have been going through on that street from the alley north of Mrs. Evans' property down to my property for about six years. It has just been used as a passageway for the people around the resort. It has been fenced up, but has been used by her and any one else that wished, out to the alley."

There was other evidence supporting the contention of both plaintiff and defendant but the foregoing extracts substantially cover the issues.

Defendant contends abandonment was sufficiently proven. In the case of Johnson v. Rasmus, 237 Mo. 587, cited by defendant, the evidence showed a clear case of abandonment, and as to this the Supreme Court said: ''From the testimony showing the complete abandonment of the old road, except the short portion connecting on its side for a distance of about a furlong the farm now owned by plaintiffs with the new road, it is clear and undisputed there is no claim that any abutting property owner has not abandoned any rights he may have had to reimbursement, or that any action has ever been taken until plaintiffs' suit. The farm now owned by plaintiffs was then rented to defendant. The evidence shows that his landlord interposed no objection to the vacation of this road or the substitution of the new one. Under these circumstances, we think the defense of abandonment has been substantiated in accordance with the provisions of the governing statute.'' [l. c. 592.] The court further held that abandonment must not be done to the injury of vested rights of abutting owners. The case at bar is a fair illustration of that exception to the right of abandonment. Plaintiff is shown to have substantial and asserted rights in the platted streets as an abutting property owner. She is entitled to have those rights protected. [Heitz v. City of St. Louis, 110 Mo. 618, 19 S. W. 735; Drummel v. Kansas City, 180 Mo. App. 339, 168 S. W. 280.]

To our minds this case appears to be the result of a desire to secure a sort of monopoly in the tourist business of Jerome. The peace and harmony which should exist between brother and sister has apparently been destroyed by bitter rivalry in the resort business. Defendant's sudden desire to fence the streets in question was the natural result of such rivalry. In order for defendant to prevail and satisfy that desire it was necessary for him to prove by a preponderance of the evidence that both Third and Elm streets had been abandoned by non-user for at least twenty years before the filing of the petition. In this we think defendant has failed. Particularly is this true as to Third street, which he admits they all traveled. He also admitted that he believed Elm street a public street until he learned of the court's order, which we have held void. The language used in State v. Culver, 65 Mo. 607, at page 611, is appropriate here.

The court there said: ''The evidence in this case seems to establish the fact that the road obstructed by defendant was of but little or no public utility. In such cases the statute makes ample provision for the discontinuance or vacation of such roads, and it is far safer, both for individuals and the public that the methods prescribed by law for getting rid of useless roads should be pursued, than that an individual should determine the question both for himself and the public, and when he does undertake so to determine,

he must take the risks and incur the penalties which any mistake he may make will bring."

Defendants are not estopped from proceeding according to law and securing, if proper, an order of the county court, vacating the streets, and the twenty year rule would not apply in such a case, because non-user would not be the sole issue.

The other defenses seem to have been abandoned.

We therefore hold plaintiff entitled to the relief prayed and that the cause should be reversed and remanded with directions to enter a decree for plaintiff enjoining defendants from erecting any fence or fences or other obstructions along or across Elm and Third streets in the town of Jerome. It is so ordered. *Cox, P. J.,* and *Smith, J.,* concur.