Earl A. GINTER, D. H. Griffin, and Arthur A. Storck, Trustees of Webster Meadows Subdivision, Appellants,

v.

CITY OF WEBSTER GROVES, a Municipal Corporation, Respondent.

No. 48511.

Supreme Court of Missouri,

Division No. 2.

Sept. 11, 1961.

Rehearing Denied and Opinion Modified on Court's Own Motion Oct. 9, 1961.

Marvin E. Boisseau, St. Louis, for appellants.

H. Jackson Daniel, Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, for respondent.

STORCKMAN, Judge.

This is a suit for a declaratory judgment, the purpose of which is to determine whether certain streets in Webster Meadows, a subdivision in the City of Webster Groves, St. Louis County have been dedicated to public use. The plaintiffs are the trustees of the subdivision and each owns a lot in the subdivision. The defendant is a municipal corporation organized and existing as a constitutional charter city. The trial court, sitting without a jury, found that the streets had been dedicated to the public use and were open and public streets within the City of Webster Groves. The plaintiffs have appealed. The parties will be referred

to as they were designated in the trial court. The principal issue here, as it was in the trial court, is whether the dedication of the streets by the developer of the subdivision was accepted by the City.

The facts are shown chiefly by a plat of the subdivision and written exhibits. The plat, plaintiffs' Exhibit 1, designates 20 residential building lots, two streets, Worthing Drive and Rock Hill Road, each 50 feet wide, and a strip of land ten feet in width for the widening of Old Watson Road. The certificate on the plat executed and sworn to by Building For Christ, Inc., a corporation, the owner of the subdivision, under date of August 3, 1954, reads as follows: "The undersigned owners of the tract of land above platted and described in the surveyors certificate have caused the same to be subdivided in the manner shown on the above plat which subdivision shall hereafter be known as 'Webster Meadows'.

"The building lines shown on the above plat are hereby established. The easements shown on the above plat are hereby dedicated to the City of Webster Groves for sewers and public utilities. Rock Hill Road, 50' wide, Worthing Drive, 50' W, and the 10' wide strip for widening along the east line of Old Watson Road, for better identification shown etched on the above plat, are hereby dedicated to public use forever.

"All of the lots in the above subdivision shall be sold subject to the easements shown on the above plat and subject to the conditions, restrictions, covenants and agreements contained in a declaration of restrictions filed for record on even date with this instrument."

The certificate of the city clerk of Webster Groves, appearing on the plat and dated December 3, 1954, states that: "* * * the above plat of 'Webster Meadows' was approved by the City Council of the City of Webster Groves, Missouri, by Ordinance No. 5843, approved the 2nd day of Dec. 1954; the City reserving the right to withold [sic] acceptance of streets indicated on this plat until same have been approved by its City Engineer."

The Ordinance, No. 5843, plaintiffs' Exhibit 2, approved the plat of the subdivision and concluded with this proviso: "* * * provided, however, that nothing in this ordinance contained shall be construed or interpreted as an acceptance by the City of the streets or public ways dedicated thereon to public use, the City expressly reserving the right to withhold such acceptance until the improvement thereof is satisfactory to the City Engineer."

The plat of the subdivision as above described and a Trust Agreement and Indenture of Restrictions, plaintiffs' Exhibit 3, were both recorded on March 7, 1955. The Indenture, recorded immediately after the plat, was executed by the owner of the subdivision and the first board of trustees consisting of three members. The plaintiffs contend that the plat and the Indenture are "inconsistent and contradictory" in that the plat purports to dedicate the streets and the Indenture indicates that the streets are to be held in trust by the trustees for the sole use and benefit of the lot owners. Two provisions are chiefly relied on. One is this recital: "Whereas, it is the desire and intention of the parties hereto that the various lots in said Subdivision as shown by said plat shall be restricted to the uses and purposes as hereinafter set forth, and that parks and streets, as shown by the said plat and by whatever names called, shall be reserved for the exclusive use and benefit of the owners of lots in said Subdivision, their heirs and assigns, subject to the rights, privileges, exceptions, limitations, restrictions, protection and management thereof, as hereinafter provided, and subject to existing easements; * * *." The other is paragraph 1 of the Indenture which is as follows: "The areas delineated and set apart as parks or streets on the record plat are to be held in trust by the Trustees for the exclusive use and benefit of all the lot owners in this Subdivision, * * *." The Indenture refers to the plat

and incorporates it in this manner: "Whereas, the Owner has caused said tract of land to be platted as a subdivision under the name of Webster Meadows and has caused a plat thereof to be made, approved and recorded in the office of the Recorder of Deeds for St. Louis County, Missouri, * * * which plat is hereby referred to and made a part hereof; * * *."

The subdivision was developed and private residences were built on all the lots. Thereafter, on March 19, 1958, the trustees filed with the defendant's City Manager a written instrument entitled "Revocation Of Purported Dedication Of Streets In Webster Meadows Subdivision", which after certain recitals concluded: "Now Therefore, we, the undersigned, the duly elected, qualified and acting Trustees, under the provisions of the 'Trust Agreement and Indenture of Restrictions' concerning the said Subdivision above referred to, hereby revoke, cancel and annul the alleged or purported dedication of the above named streets in said Subdivision, and withdraw any such purported dedication or offer of dedication to public use; and declare that hereafter we, and our successors will hold said streets in trust for the exclusive use and benefit of the lot owners of said Subdivision, as provided in the 'Trust Agreement and Indenture of Restrictions' applicable thereto."

Plaintiffs also introduced in evidence a written agreement (Exhibit 5) dated December 30, 1954, in the form of an earnest money contract for the purchase of Lot No. 2 of the subdivision by S. Terrill Judd and his wife from Building For Christ, Inc., the owner of the subdivision. The contract called for the erection of a residence thereon according to plans and specifications. There was testimony that Mr. Judd bought the lot and was "living in that place", but the evidence does not show when the residence was erected or that Mr. Judd has made an adverse claim to the land adjacent to his lot "to the center of" Worthing Drive although he was one of the signers of a petition, defendant's Exhibit A, signed by 18 out of 20 lot owners, requesting the City to "formally vacate" the dedication of the streets so that "the care and maintenance thereof may be turned over to the property owners of the subdivision." The date of the petition or its filing is not shown. The plaintiffs contend Mr. Judd became the equitable owner of Lot 2 prior to the recording of the plat. The earnest money contract for the Judd lot was also dated prior to recording the Indenture of Restrictions from which the trustees derive any rights they have. There is no showing whether or not Mr. Judd and his wife acknowledge themselves to be bound by any terms of the Indenture.

The petition of the trustees to vacate the streets was rejected on March 31, 1958, by the City Plan Commission. By Ordinance No. 5975, passed and approved on May 27, 1958, the City formally accepted the "statutorily dedicated streets". The defendant's evidence tended to prove that the City on January 16, 1958, filled cracks that had developed in both Worthing Drive and Rock Hill Road. There was also evidence taken subject to the plaintiffs' objection that on February 27, 1959, after suit was filed the defendant's street department washed mud off the streets in question, picked up gravel and cleaned the intersection. The trustees did nothing by way of maintaining the streets; they contended maintenance was not needed during the time in question since the streets were new. The evidence will be further discussed during the course of the opinion.

■ The appeal was first taken to the St. Louis Court of Appeals where the respondent questioned the jurisdiction and the appeal was transferred to this court. Ginter v. City of Webster Groves, Mo. App., 338 S.W.2d 371. Since the plaintiffs seek a judgment declaring that they are the exclusive owners of the streets in trust for the lot owners of the subdivision, while the defendant claims that the streets have been dedicated to public use, and the judgment is responsive to this issue, title to real estate is directly involved thereby vesting jurisdiction of the appeal in this

court. Art. V, § 3, Constitution of Missouri, 1945, V.A.M.S.; Billings v. Paine, Mo., 319 S.W.2d 653, 657[6]; Dowd v. Lake Sites, Inc., 365 Mo. 83, 276 S.W.2d 108, 109[1]; Cantrell v. City of Caruthersville, Mo., 267 S.W.2d 646, 648[4].

The plaintiffs' first contention is that the streets in question were never dedicated to public use because the plat and the owner's declarations thereon constituted an offer only which was withdrawn or revoked before it was accepted by the City. The defendant counters with the contention that the owner of the subdivision had the power to dedicate the streets and that the dedication was legally sufficient both under the statutes and under the rules of common law.

At common law it was generally necessary that the offer to dedicate be accepted which acceptance could be either expressed or implied. Benton v. City of St. Louis, 217 Mo. 687, 118 S.W. 418, 422.

■ While common law dedication of land to public uses has not been abolished, (City of St. Charles v. De Sherlia, Mo. App., 308 S.W.2d 456, 465[6]), our statutes provide a comprehensive plan for the platting and approval of real estate subdivisions, and the dedication of land for streets and other public uses. Section 445.010 RSMo 1949, V.A.M.S. provides that a plat of a subdivision shall set forth and describe all parcels of ground reserved for public purposes including streets. Section 445.020 provides how the plat should be drawn, and § 445.030 provides that when the plat be of land situated within the limits of a city it shall not be placed of record until it has been submitted to and approved by the common council of the city by ordinance and the fact of such approval has been endorsed upon the plat by the city clerk. This section further provides among other things that the common council in its discretion may require such changes or alterations in the plat as may be necessary to make the plat conform to any zoning or

street development plan which has been adopted or appears desirable or to other city ordinances pertaining to subdivisions of land within the corporate limits. Section 445.070 provides that when such plats have been "made, acknowledged, certified and recorded" it shall constitute a sufficient conveyance to vest the fee of such parcels of land therein described or intended for public uses "in trust and for the uses therein named, expressed or intended, and for no other use or purpose".

■ When the dedication of streets within a city complies with the statutory provisions, the dedication is valid and irrevocable without acceptance by the city. Buschmann v. City of St. Louis, 121 Mo. 523, 536, 26 S.W. 687; Hill v. Hopson, 150 Mo.App. 611, 131 S.W. 357; Neil v. Independent Realty Co., 317 Mo. 1235, 298 S.W. 363, 370, 70 A.L.R. 550; Bell v. Walkley, Mo.App., 27 S.W.2d 456, 458; Evans v. Andres, 226 Mo.App. 63, 42 S.W. 2d 32, 35[8]. This is quite understandable because § 445.030 provides that the plat of the subdivision showing all parcels of land reserved for public purposes (§ 445.-010, subd. 1) shall be submitted to the common council and approved by ordinance before it is placed of record.

In this case there was substantial compliance by the owner with the statutory requirements for developing a subdivision including the dedication of land for public purposes, but we are confronted by the fact that the approval of the City was qualified or conditional. The ordinance provided that the City reserved the right to withhold acceptance of the streets and public ways dedicated to public use "until the improvement thereof is satisfactory to the City Engineer." It may be inferred from the evidence that the surfacing and improvement of the streets had not been completed at the time the plat was presented and the ordinance passed since there was testimony that the concrete streets were being poured while the Kluge home, which was completed in October 1955, was being built. Neverthe-

less, the acceptance was reserved and we must determine if there was an acceptance, express or implied, while the offer to dedicate was existing and outstanding.

The evidence that the City filled cracks in the streets might be sufficient to support an implied acceptance of the dedication because where the dedication is beneficial or necessary to the public, acceptance will be implied from very slight circumstances. Shaw v. St. Louis-San Francisco Ry. Co., 223 Mo.App. 1008, 9 S.W. 2d 835, 838[6]; 26 C.J.S. Dedication § 45, pp. 494–495. But an acceptance need not rest upon the act of maintenance since we have concluded that neither the trustees nor the eighteen lot owners who petitioned the City had the right to withdraw or revoke the offer of dedication.

■ The dedication of land for a public street under our statutes does not convey title in fee simple but vests a fee in trust for the public purpose and on abandonment the land reverts to the original dedicator or his grantees. Section 445.070, subd. 2, RSMo 1949, V.A.M.S.; Neil v. Independent Realty Co., 317 Mo. 1235, 298 S.W. 363, 371[8], 70 A.L.R. 550; Eureka Real Estate & Investment Co. v. Southern Real Estate & Financial Co., 355 Mo. 1199, 200 S.W.2d 328, 333[10]. The dedicator in this case was Building For Christ, Inc., a corporation, and the owners of the various lots in the subdivision were grantees of the company.

■ After all of the lots had been sold, any right then existing to revoke the dedication could not have been exercised without the consent of all of the grantees. In McQuillin on Municipal Corporations, 3d Ed., Vol. 11, § 33.60, pp. 743–745, the rule as to revocation is stated in this fashion: "If the dedication is not complete without acceptance on the part of the public, in the absence of acceptance, the general rule is that the dedicator can revoke the dedication, and the revocation may take place by withdrawing the offer prior to acceptance, provided no public or private rights have intervened which would be impaired by the revocation, or, if private rights have intervened, if the persons having such rights consent to the revocation, there having been no acceptance by the municipality. To illustrate, where a lot is sold with reference to a plat showing a street the grantor may revoke the dedication, if it has not been accepted by the municipality provided he obtains the consent of his grantee, but if there are several grantees he cannot revoke the dedication without the consent of all the grantees."

To the same effect is 16 Am.Jur., Dedication, § 29, p. 375, which states: "In general, the proprietor may revoke or withdraw his offer of dedication, in whole or in part, at any time before it is accepted by the public or its representatives and before the rights of private persons have intervened. Where the rights of private persons have been acquired in the dedication, such private persons together with the dedicator may rescind the dedication as against the public if the public has not accepted it." 26 C.J.S. Dedication § 58, p. 545, discusses the dedication of streets resulting from the sale of lots as between the grantor and grantees and further states: "It follows that the dedication can be revoked prior to acceptance, provided the claims of grantees are extinguished, or they all consent; but the grantees have the right to insist that the offer of dedication be held open even though there has been no acceptance by the city, and the dedicator's sale of the property will not destroy that right."

The dedicator, Building For Christ, Inc., has not undertaken a revocation. In fact the president of the company testified on behalf of the defendant and tended to support the dedication. Nor are all of the lot owners in favor of the revocation of the dedication. Eighteen of the twenty lot owners did file an application with the City of Webster Groves requesting the City to vacate the streets, but one of the other lot owners testified in favor of the

defendant's contention. Paragraph 20 of the Indenture provides that it can be amended only by the unanimous agreement of all of the lot owners. The plat by reference was made an integral part of the Indenture. Our next inquiry is whether the trustees possessed the right of revocation which they purported to assert.

In the performance of their duties, the trustees were bound to comply strictly with the trust instrument by which their powers and authority are determined. Coleman v. Lill, Mo.App., 191 S.W.2d 1018, 1020[1]. Unless the power to do so was properly granted, the trustees had no authority to change the status of the streets in the subdivision. Britton v. School Dist. of University City, 328 Mo. 1185, 44 S.W.2d 33, 34[2].

The plaintiffs urge that the plat and the Indenture are conflicting and inconsistent in that the plat expresses an intent to dedicate the streets to public use and the Indenture purports to vest the trustees with duties as if the streets were private. In this situation the plaintiffs urge that the real estate should not be burdened with an easement for a public street. The cases plaintiffs cite generally involve building line restrictions and their violation. The plaintiffs' position assumes that a public street would be a burden to the property, whereas some lot owners seem to consider it a benefit at least insofar as maintenance and upkeep is concerned.

The Indenture recites that the plat has been made, approved and recorded and states that the "plat is hereby referred to and made a part hereof". By this reference the plat was made as much a part of the Indenture as if fully incorporated therein. City of Mexico v. Baysinger, Mo.App., 313 S.W.2d 166, 169–170 [2].

Where there are two or more instruments creating, defining or regulating a trust, they should be construed to-gether as parts of one transaction and harmonized if possible. Ervin v. Davis, 355 Mo. 951, 199 S.W.2d 366, 369. On the plat the streets are specifically referred to and "dedicated to public use forever". The Indenture provides that the areas designated as parks or streets on the record plat are to be held in trust by the trustees for the exclusive use and benefit of all the lot owners in the subdivision, but no parks or streets are specifically designated. Furthermore, the Indenture provides that the parks and streets shall be subject to existing easements. Also the reference in the Indenture to parks and streets is of general nature as opposed to the specific provisions of the plat. In fact, no parks at all are shown on the plat.

We find that the clear and specific expression of intention to dedicate the streets to public use prevails over the general provisions of the Indenture. While these provisions apparently have no present usefulness, they could become activated if the subdivision acquires parks, or if present streets are vacated and become private or if new ones of a private character are created. We cannot interpret the Indenture as an attempt to recapture or avoid the intent to dedicate the streets as shown by the plat. It follows that the Indenture did not vest the trustees with any authority to revoke the offer of dedication. Britton v. School Dist. of University City, supra.

Since no one with authority to do so undertook to withdraw or revoke the offer to dedicate the streets to public use, it follows that it remained available for acceptance by the City which was done by the express provisions of the ordinance adopted on May 27, 1958. Price v. Town of Breckenridge, 92 Mo. 378, 385[3], 5 S.W. 20; City of Hardin v. Cunningham, 285 Mo. 457, 226 S.W. 872, 873[1].

The earnest money contract between the owner of the subdivision and Mr. Judd dated December 30, 1954, for the purchase

of Lot 2 is not helpful to the plaintiffs. The plat was prepared and the dedication certified thereon by the owner on August 3, 1954. On December 3, 1954, the city clerk certified the plat as having been approved by ordinance. Section 445.070, subd. 1, provides a penalty for selling lots before the plat is recorded. Mr. Judd is not a party to this suit and we will not presume that he did not have notice of the plat and that he rejects the plat. Furthermore, we do not understand how he could claim to come under the Indenture and yet not be bound by the plat which was a part thereof and recorded on the same day.

The plaintiffs urge further points based on alleged errors in the admission of evidence. The consideration of these additional questions is unnecessary since our decision does not rest upon any of the evidence complained of. The judgment is affirmed.

All concur.